##### AT THE

## JANUARY TERM 1867, AT BOSTON.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. EBENEZER R. HOAR,
Hon. REUBEN A. CHAPMAN,
Hon. HORACE GRAY, Jr.,      } Justices.
Hon. DWIGHT FOSTER,
Hon. JOHN WELLS,

## ESSEX COUNTY.*

### John P. Woodbury vs. John Luddy.

An estate of homestead acquired under *St.* 1855, *c.* 238, cannot be lost by mere abandon-
ment, until a new homestead is acquired elsewhere.
If one who has agreed to convey land is unable to give a perfect title thereto, and the pur-
chaser elects to take such title as the vendor can give, with compensation for the defi-
ciency, he will be allowed as damages only the fair value of what is not conveyed.

BILL IN EQUITY to enforce the specific performance of a writ-
ten agreement by the defendant to convey to the plaintiff certain
real estate in Lynn, free of incumbrances. The making of the
agreement was admitted.

The case was referred to a master, by whose report it ap-
peared that the estate consisted of two adjoining lots, with

---

* WELLS, J. did not sit in the cases from Essex County

dwelling-houses thereon, and that the defendant, who was married in 1850, received a deed of the first lot in 1852, and lived thereon with his wife until after May 1855, when he went with her to live in the house upon the second lot, which was conveyed to him in November 1858, he having a bond for a deed thereof dated in 1853; and afterwards he removed again to the house upon the first lot. While the defendant was occupying each of the lots and buildings as above stated, the other lot was occupied by a tenant who hired the same of the defendant. The defendant's wife was entitled to dower in the premises, and, without any procurement or instigation, so far as appeared, of her husband, refused to join in a deed thereof. And it was also contended by the plaintiff that the premises were subject to an estate of homestead.

The master found that the value of the estate agreed to be conveyed was $3900, and that the imperfection of title caused by the wife's inchoate right of dower would reduce the market value of the estate to the extent of thirty per cent.; that, estimated by the tables of mortality, the value of her right of dower would be $269, which sum he allowed as damages; and the value of the estate of homestead, in case such estate should be found to exist, would be $533; but he made no allowance on account of any estate of homestead, deeming the same to have been lost by abandonment.

The plaintiff excepted to the master's report, because he made no allowance for the estate of homestead, and because he adopted an erroneous measure of damages for the breach of the contract in omitting to convey the right of dower.

*G. O. Shattuck & J. B. Thayer*, for the plaintiff.

*S. B. Ives, Jr.*, for the defendant.

HOAR, J. The first question on the exceptions taken to the master's report is, whether he was right in finding that the wife of the defendant had no right of homestead in the estate which was the subject of the contract.

It is conceded that a homestead estate was acquired under the statute of 1855, and that no new homestead has since been gained by the defendant. But the defendant removed with his

Woodbury *v.* Luddy.

family, in 1858, from the lot on which he had acquired a home-
stead, and the report finds that there is no evidence of any act
or intent on the part of either the defendant or his wife to con-
tinue the right in the house or lot from which they removed,
though they have since returned to it. While they ceased to
occupy it, the defendant leased it to a tenant. The question is,
therefore, whether the homestead right was lost by abandon-
ment.

There is great difficulty in reconciling the language used in
the various decisions upon the subject.

The statute of 1855 created the homestead exemption in the
farm or lot, and buildings thereon, " occupied as a residence, and
owned by the debtor, or any such buildings owned by the debtor
and so occupied, on land not his own, but of which he shall be
in rightful possession, by lease or otherwise, he being a house-
holder and having a family." It provided that no release or
waiver of such exemption should be valid, unless by deed for
good consideration, acknowledged and recorded as in the case
of conveyances of real estate ; and that the exemption should
continue after the death of the householder, for the benefit of
the widow and children of the deceased party, some one of them
continuing to occupy such homestead, until the youngest child
should be twenty-one years of age, and until the death of the
widow. It further provided that no conveyance by the husband
of any property thus exempted should be valid in law unless the
wife joined in the deed of conveyance.

In the subsequent statutes which create a homestead estate
there are different provisions, which do not affect the homestead
exemption acquired under the statute of 1855.

There is nothing in the language of the statute which would
show that the " release or waiver " which it names is applicable
to anything else than the homestead exemption for which it pro-
vides ; that is, the exemption of a homestead occupied as a res-
idence by the debtor. And it would not seem an unnatural con-
struction to hold that, as the exemption was only of a homestead
thus occupied, the removal of the owner from the property ex-
empted would terminate the homestead ; not by reason of any

waiver or release, but because the condition of the exemption thereby ceased to exist. The continuance of the right to the widow and children was made expressly dependent on the continuance of the occupation. And this was the view which was taken in some of the earlier decisions. Thus in *Drury* v. *Bachelder*, 11 Gray, 214, it is said by Mr. Justice Dewey: "That a homestead right or exemption may be lost is obvious. Such would be the effect of acquiring a new homestead by a change of place of residence, or by other acts of abandonment of an unequivocal character by all parties interested in its continuance." But in that case it was held that there had been no such change of residence as to constitute an abandonment; and the reasoning of the court implies that the removal of the husband without the consent and concurrence of the wife would not be sufficient.

But in *Connor* v. *McMurray*, 2 Allen, 202, it was expressly decided that a right of homestead acquired under *St.* 1857, *c.* 298, was not lost by the removal of the householder and his family from the premises ; the court saying that the provision in the statute that " no release or waiver of such exemption shall be valid in law unless by deed, acknowledged and recorded as in the case of conveyances of real estate," is a complete and decisive answer to the suggestion that the homestead would be lost by removal. This provision is precisely the same in the statute of 1855. The statute of 1857 contains a clause not found in that of 1855, to the effect that no new right of homestead should be acquired, until a previous one had been discharged or released by a deed, with the consent of the wife expressed therein ; which, in connection with the requirement that a homestead right should be a matter of record, would tend to support the conclusion to which the court arrived ; and perhaps furnishes the most conclusive reason for it; but the reason given in the opinion is applicable alike to both statutes. In *Doyle* v. *Coburn*, 6 Allen, 71, it was held that the removal of the wife and children of the owner, and the sale of the premises on an execution against him, did not defeat his right of homestead exemption if he continued personally in possession. The case of *Castle* v

*Palmer*, 6 Allen, 404, is only to the point that a deed of the husband, in which the wife does not join, is inoperative to release the homestead, even during his life. In *Dulanty* v. *Pynchon*, 6 ALen, 510, the court held that the removal from the premises for a temporary purpose, with the intention to return, would not affect the homestead right; and this was sufficient for the decision of the case. But the chief justice, who delivered the opinion, gave as an additional reason for it, that a homestead right, once acquired under the statute of 1855, could not be discharged except by deed. In *Lazell* v. *Lazell*, 8 Allen, 575, the decision was placed on the ground that the removal from the premises was not shown to be for other than a temporary purpose. Mr. Justice Dewey then observes, after citing *Drury* v. *Bachelder*, and *Dulanty* v. *Pynchon*, that "these and other reported cases indicate strongly the views of this court to be that if any abandonment can have the effect to defeat an existing homestead, upon which we express no opinion, it must be full and complete, and under circumstances that leave no doubt that such was the intention of all parties interested in the homestead right, and that they had a settled purpose not to return to the same as a place of residence." He does not refer to *Connor* v. *McMurray*, and seems to consider the question as open.

As the decision in *Connor* v. *McMurray* was under the statute of 1857, and was clearly right under the special provisions of that statute, and as the decision in *Dulanty* v. *Pynchon* rests upon satisfactory grounds, not dependent upon the question now before us, there could be no insurmountable objection to treating the provisions of the statute as still unsettled by judicial construction.

But the decisions which have been made upon another part of the statute seem to us conclusive, and to establish by authority the construction, that no abandonment of the premises to which the homestead exemption has once attached will be sufficient to terminate it, until a new homestead is acquired elsewhere. The original exemption is created by the statute, not merely by reason of the ownership and occupation of the land or buildings, but it requires also that the occupant shall be a

householder and have a family. *Woodworth* v. *Comstock*, 10 Allen, 425. No good reason can be given why the continuance of one of these conditions should be held essential to the continuance of the homestead, more than of the other. But in *Doyle* v. *Coburn*, 6 Allen, 71, it was expressly held that the homestead was not lost by the loss of his family by the householder. And see also *Silloway* v. *Brown*, 12 Allen, 30.

The first exception to the master's report is therefore sustained; and there must be added to the sum which the defendant is to pay on account of his failure to convey the estate with a release of dower, the sum of $533, which is found to be the present value of the homestead right. The other exception to the report cannot be supported.

The general rule undoubtedly is, that when a person can only partially perform a contract into which he has entered, he must respond in damages to the extent of the difference in value between that which the other party receives and that to which the contract entitled him. And this is found by taking the market value of what is delivered, and deducting it from the market value of the whole subject of the contract. *Wetherbee* v. *Bennett*, 2 Allen, 428. But this rule is not universal; and, in the case of an incumbrance on an estate conveyed with covenants of warranty, the more usual measure of damages for the breach of the covenant against incumbrances has been the market value of the incumbrance, where this was capable of an exact estimate. *Estabrook* v. *Hapgood*, 10 Mass. 315.

But under the peculiar relation of the parties, we can have no doubt that the latter rule is the just one. The plaintiff seeks the aid of a court of equity to compel the specific performance of the defendant's contract to convey land. The defendant is unable to make a perfect title; and the court, at the plaintiff's election, will compel the conveyance of so much as the defendant can convey, and will award compensation in the nature of damages for the deficiency. The defendant has not undertaken to apportion the contract. If he were sued at law, the whole market value of the estate would be the measure of damages But dividing the estate may very much increase the proportionate

damages, without any corresponding advantage to the defend-
ant. By making the election, the plaintiff undertakes to receive
what the defendant never agreed to give, namely, a partial con-
veyance of the estate; and equity will only allow this on the
condition that the defendant shall not thereby be subjected t
unreasonable injury. The plaintiff in effect elects to take satis
faction partly in land and partly in money; and if he is allowed
to do this he should only in equity be allowed to receive the fair
money value of the part of the estate which is not conveyed to
him. In the adjudged cases, though this is sometimes called
damages, it is more usually spoken of as an equitable compen-
sation for the value of that which the defendant does not con-
vey.                                   *Decree accordingly.*