---

Argued Sept. 21, decided Oct. 17; rehearing denied Nov. 20, 1911.

### KURATLI v. JACKSON.

[118 Pac. 192: 118 Pac. 1013.]

SPECIFIC PERFORMANCE—CONTRACTS FOR SALE OF REAL ESTATE—ABATEMENT OF VALUE OF INCHOATE DOWER.

1. Where the purchaser knows the vendor has a wife, who does not join in the contract, equity will not enforce the contract by ascertaining the present value of the inchoate dower of the wife, and abate the price.

APPEAL AND ERROR—REVIEW—CHANGE OF ISSUES.

2. Where, in a suit for specific performance, defendant was brought into court on the theory that he was required to accept a reduced price because he could not give a clear title, and contested that claim, plaintiff could not have the decree modified on appeal, so as to give specific performance on payment of the contract price, if plaintiff elected to accept conveyance, since such election should have been made before decree, and the issues could not be changed in the Supreme Court.

From Washington: JAMES U. CAMPBELL, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

On July 27, 1908, defendant, J. W. Jackson, entered into an agreement with plaintiff, E. I. Kuratli, whereby he sold and agreed to convey to him certain real property known as the "Chenette Row Buildings," in Hillsboro, Oregon, for $3,000, upon which purchase price plaintiff paid $20, and defendant executed to him his receipt therefor in the following words:

"Hillsboro, Oregon, July 27, 1908.

"Received of E. I. Kuratli, twenty and no-100 dollars in part payment on property known as the Chenette Row Buildings on Main Street, between 1st and 2nd Streets, Hillsboro, Oregon, for $3,000, balance to be paid when good title is furnished by August 1st, 1908.

J. W. JACKSON."

At this time the property was occupied under Jackson by various tenants, of whom plaintiff was one. Defendant, a married man, was the owner of the property, subject to a life estate in a part thereof, namely, the dower estate of Lucinda C. Jackson, the mother of defendant. On July 31st, plaintiff tendered to defendant the balance of the purchase price, and defendant refused to convey. Plaintiff brings this suit for specific performance of the contract, and sets up the defect in the title of the defendant, namely, the dower interest of Lucinda C. Jackson, alleged to be of the value of $300, as well as the inchoate dower interest of defendant's wife, Maria Jackson, of the alleged value of $500, and asks an abatement of the price equal to the value of such dower interests. He deposited with the clerk of the court the balance of the purchase price, $2,980.

Upon the trial, the court rendered a decree for specific performance, as follows:

"The clerk of this court is hereby directed to pay to said J. W. Jackson the sum of $1,400, and the said

plaintiff is hereby ordered and directed to make, execute, acknowledge, and deliver to the clerk of this court, within 70 days from the date hereof, for delivery to the defendant, J. W. Jackson, a first mortgage upon the real property herein described, conditioned as follows: That upon the death of the said Maria Jackson, or whenever the said Maria Jackson shall release and convey to the said E. I. Kuratli, his heirs or assigns, her interest in said real property, the said E. I. Kuratli will pay to the said J. W. Jackson the sum of $1,420, with interest thereon at the rate of 6 per cent. per annum, interest payable annually, and, in the event of the death of J. W. Jackson before the death of Maria Jackson, that the said E. I. Kuratli will pay to the estate, representatives, heirs, or assigns of the said J. W. Jackson, upon the death of Maria Jackson, or whenever the said Maria Jackson shall release and convey to the said E. I. Kuratli, his heirs or assigns, her interest in said real property, the said sum of $1,420, less such sum or sums as the said E. I. Kuratli, his heirs or assigns, shall have previously paid to the said Maria Jackson as dower in and to said real property."

Defendant appeals.                              REVERSED.

For appellant there was a brief over the names of *Messrs Bagley & Hare,* with an oral argument by *Mr. W. G. Hare.*

For respondent there was a brief over the names of *Mr. Samuel B. Huston, Mr. Benton Bowman* and *Mr. H. T. Bagley,* with oral arguments by *Mr. Huston* and *Mr. Bowman.*

Opinion by MR. CHIEF JUSTICE EAKIN.

Assuming, without deciding, that the receipt given by Jackson was such a memorandum of the agreement as fulfills the requirements of the statute of frauds, the important question is whether plaintiff is entitled to the specific performance of it in this suit, under the facts disclosed. The court adjudged the value of Lucinda C. Jackson's interest to be $160, and that Maria Jackson's interest to be of the possible value of $1,420; and also

adjudged that plaintiff is the owner of the land in fee, and provided that, if Lucinda C. Jackson and Maria Jackson refuse to join in a conveyance, the purchase price be abated by the value of Lucinda C. Jackson's dower interest ($160) ; and that the possible value of Maria's interest ($1.420) shall be secured by a mortgage to defendant, payable to his estate, after the death of both defendant and wife, if Maria survives him, less the amount that may have been paid by plaintiff to Maria as her dower. Lucinda C. Jackson has a right at any time, unaffected by this decree, to have her dower in the property assigned; and Maria will have the same right, if she survives her husband. If her estate should hereafter be assigned, the damages suffered by plaintiff by reason thereof can only be assessed after the death of Maria as the value of the use of such interest during the time it shall have been so occupied by her or her assigns, and not as specified in the mortgage, which seems to contemplate a payment of money to Maria by plaintiff.

It must be conceded that the value of Maria's inchoate dower interest, which is a contingent life estate in one-half of the land, cannot possibly be equal to one-half of the value of the property. By any theory of the case, Jackson is entitled to the present cash value of his interest, which the complaint admits is $2,200. However, the decree of the lower court gives relief to the plaintiff very different from that prayed for or contemplated by the contract, and it is not likely that plaintiff would now consent to it, if it were not for the possibility that the decree will coerce the wife to join in a deed to him, as the court cannot give him a title free from the dower estate.

According to Giauque & McClure's Present Value Tables, the value of Lucinda C. Jackson's interest at the time of the decree, if her dower became consummate subsequent to May 18, 1893, was $311.49; and if defendant were now dead, and the dower of Maria consummate, its

present value, computed at 6 per cent, would be $869.70; the value of the property being $3,000; and the wife being 52 years of age at the time of the trial. But the husband and wife being of the same age, and assuming them to be equally in good health, the expectation of life of the husband is approximately equal to that of the wife; and there is nothing upon which to estimate the value of the wife's dower. Giauque & McClure's Present Value Tables, at page 192, gives the expectancy, at the age of 52 years, of males 19.84 years, and of females 19.87. Therefore, the wife's prospective dower is for less than 11 days, and it is purely a gamble that she will not outlive her husband. According to the same author, the present value of the inchoate dower of the wife is $175.59; and plaintiff has not the privilege or right to cut off the wife's dower by the payment of that amount; nor does that sum become the maximum of the liability of the property hereafter. When a court attempts to determine the present value of an inchoate dower interest, the result is most unsatisfactory and unreliable. Computations based on mortality tables are a rule of values in law, in actions for damages, or other cases where questions arise dependent on the expectation of life; but it seems to be a very doubtful basis upon which to compute a value to be substituted for a price fixed by contract. These mortality tables are no doubt approximately correct as an average of many cases, yet in any individual case reliance thereon would be a mere speculative hazard.

Giauque's Settlement of Estates, at page 816, says that the present value of the contingent dower during the husband's life may be ascertained with reasonable certainty from established tables of mortality, aided by evidence in reference to the health and vigor of the husband and wife. Nothing is given in this case upon those matters; nor can we conceive in what manner or by what rule the effect of the present condition of the health

or vigor of the husband or wife upon their longevity can be computed with mathematical certainty to affect the value of the inchoate dower in such a case. Plaintiff in this case knew at the time he took the receipt that defendant was married, and if he desired the contract to include the wife's dower he knew how to secure it, and now he is not in a position to ask the court to make a new contract for him.

In *Sternberger* v. *McGovern,* 56 N. Y. 12 : 19, the court say :

"Under such a contract, to require the defendant to convey the Mott Haven property to the plaintiffs, and pay such compensation as the court should determine its market value was impaired by the outstanding inchoate right of dower, or such sum as the real value of such right, ascertained by the tables of mortality, would be harsh and oppressive. The defendant never made a contract to do this. To charge him with the difference in the market value would be unjust, as it is obvious that this incumbrance upon the title would impair that to a much greater extent than the real value of the right. To compel him, in effect, to purchase the right, by paying the plaintiff therefor its value, determined by the tables of survivorship and mortality, would in a case like this be unjust. He, as we have seen, contracted for an exchange of his property for that of the plaintiffs; under such a contract he ought not to be compelled to take the risk of the loss which the application of those tables to this particular case might subject him. These tables, when applied to a great number of cases, will, in the aggregate, show correct results; hence they may be used by life insurance companies with safety in fixing their rates, and are resorted to by courts when the probable duration of life must be determined in adjusting the rights of parties. But to determine the value of the inchoate right of dower in this way, for the purpose of enforcing the specific per-

formance of a contract for the exchange of real estate, with compensation, would be unsustained by precedents or sound principle."

And in that case plaintiff was relegated to his remedy for damages.

In *Cowan* v. *Kane,* 211 Ill. 576 (71 N. E. 1098) [October, 1904], it is said:

"In attempting to support the decree, counsel say that a computation can be made upon the basis of the mortality tables. Such tables are used more from necessity than because they are a reliable guide in fixing the probable duration of any individual life, being mere averages of many lives; but we know of no tables by which the value of an inchoate right of dower can be approximately estimated. * * It would be carrying the use of mortality tables to an unwarranted extent to apply them in such a case to determine substantial rights."

As to whether a court of equity will enforce a specific performance in such a case, by ascertaining the present value of the inchoate dower of the wife, and abating the price to that amount, the authorities are quite at variance. This may be partially accounted for by the fact that the courts, holding that performance will be decreed in such cases and the price abated to the extent of the value of the dower, are those in states where law and equity are administered by the same court, and all distinction in procedure between them is abolished, while those refusing to enforce them are courts in states where the procedure in law and equity cases is kept distinct. Upon this point, compare the classification as to procedure in 16 Cyc. 24, and note, with the cases cited in the opinion by Woodson, J., in the case of *Aiple-Hemmelmann Real Est. Co.* v. *Spelbrink,* 211 Mo. 671 (111 S. W. 480), and note to that case in 14 Am. & Eng. Ann. Cas. 671.

There is no dissent from the statement that plaintiff is entitled to a decree of specific performance, if he is

willing to accept a deed from the vendor alone, with covenants as broad as those called for in the contract; and he may then resort to his legal remedy, if he has one, against the vendor. If, however, the vendor's interest in the land is subject to a contingent estate, and specific performance of the contract is asked, with abatement of the price to the amount of the value of such contingent interest, to be determined by the court, it is beyond the province of equity to adjust such value and substitute a price for that one fixed by the parties. This court has decided that a contract for the sale of land by the husband, in which the wife has not joined, is not mutual, and therefore not enforceable in equity. *Whiteaker* v. *Vanschoiack,* 5 Or. 113 : 118. This case is cited with approval in *Deitz* v. *Stephenson,* 51 Or. 596 : 606 (95 Pac. 803).

Specific performance in such a case does not rest on the same principle involved where the vendor owns only an undivided part of the fee, in which case the vendee, if willing to accept it, may tender the proportionate amount of the price; it being unnecessary for the court to determine its value. See *Moore* v. *Gariglietti,* 228 Ill. 143 (81 N. E. 826), and note to this case in 10 Am. & Eng. Ann. Cas. 560. It is said in *Riesz's Appeal,* 73 Pa. 491, that the dower right of the widow is of such a contingent nature, depending as it does upon her surviving her husband, as well as her continuing in life after his death, that no abatement in the price can be made which would be just to both parties, without in effect making a new contract for them; a contract which, perhaps in the first instance, neither party would have agreed to, certainly not the vendor. This is the holding in *Aiple-Hemmelmann, etc., Co.* v. *Spelbrink,* 211 Mo. 671 (111 S. W. 480), in which the opinion is exhaustive, and is supported by the authorities which are there collated. The following cases support that view: *Reilly* v. *Smith,* 25 N. J. Eq. 158; *Riesz's Appeal,* 73 Pa. 491; *Fortune* v. *Watkins,* 94 N. C. 304, 315;

*Cowan* v. *Kane,* 211 Ill. 572 (71 N. E. 1097) ; *Sternberger*
v. *McGovern,* 56 N. Y. 12: 19; *Lucas* v. *Scott,* 41 Ohio St.
641; *Graybill* v. *Brugh,* 89 Va. 895: 899 (17 S. E. 558: 21
L. R. A. 133.: 37 Am. St. Rep. 894) ; *Barbour* v. *Hickey,* 2
App. D. C. 207 (24 L. R. A. 763) ; *Plum* v. *Mitchell,* (26 S.
W. 391) 16 Ky. Law Rep. 162.   In *Aiple-Hemmelmann
Real Est. Co.* v. *Spelbrink,* 211 Mo. 671 (111 S. W. 480),
there is a dissenting opinion by Mr. Justice LAMM, fol-
lowing the lead of the courts in Iowa, Indiana, and
Wisconsin.

Pomeroy, Specific Performance (1879), at section 460,
sharply criticises Judge Sharswood's reasoning on this
question in *Riesz's Appeal,* 73 Pa. 490, as utterly unten-
able.  But we find an array of comparatively recent cases
following and sustaining the rule, as laid down by the
courts of Pennsylvania and New Jersey, which seems to
be the better and safer rule.

The case of *Bostwick* v. *Beach,* 103 N. Y. 422 (9 N. E.
41), relied on by plaintiff, is not in point, as the widow
signed the contract of sale, and the ascertainment of the
value of the dower was that it might be paid to her out of
the purchase price, and she was required to convey her
dower interest.  Some courts grant such relief only in case
the refusal of the wife to join in the deed was by fraud-
ulent collusion with the husband.  Others hold that, if
the vendee had knowledge that the vendor was married,
specific performance with abatement will not be decreed.
*Lucas* v. *Scott,* 41 Ohio St. 641; *Savings Bank Co.* v.
*Parisette,* 68 Ohio St. 450 (67 N. E. 896: 96 Am. St. Rep.
672) ; *Downer* v. *Church,* 44 N. Y. 647; *Fortune* v. *Wat-
kins,* 94 N. C. 304, 315.

It is said in Waterman, Spec. Perf. § 511:

"If the purchaser, when he enters into the contract,
knows that the vendor has a wife, he of course takes the
chances of the wife's refusal to release her right of dower,
and, in the latter event, if he insists on performance, he

cannot justly claim, and will not be entitled to, anything more than a conveyance of the husband's estate."

See, to the same effect, Pomeroy, Spec. Perf. § 461.

In this case it is conceded that plaintiff knew that defendant had a wife. Therefore, we conclude that it is impracticable to determine the value of the inchoate dower; that equity will not lend its aid to coerce the wife to join her husband in a deed to plaintiff, which would be the effect or tendency of the decree rendered; that plaintiff knew that defendant had a wife with inchoate dower in the land, and he took the chance that the wife would refuse to sign the deed; that to attempt to fix a new price at which defendant shall sell the property would be to make a contract for the parties, and not to enforce the one sued on.

Plaintiff has not offered to accept the deed of defendant alone, and he is not entitled to the relief prayed for. Therefore the decree is reversed, and the suit dismissed.

REVERSED: SUIT DISMISSED.

***

Decided November 20, 1911.

ON PETITION FOR REHEARING.

[118 Pac. 1013.]

Opinion by MR. CHIEF JUSTICE EAKIN.

The petition for a rehearing first suggests that it does not appear on what ground the court rests its decision, but it can hardly be misunderstood. The opinion concludes, from the argument preceding, "Therefore," etc., and assigns four grounds why the suit cannot be maintained.

The principal argument of the petition is based on a misstatement of the effect of language of the opinion, viz., "Specific performance in such a case does not rest on the same principle involved where the vendor owns only an undivided part of the fee," while the petition cites it as

"does not rest on the same principle involved where the vendor owns less than the fee," so that the argument is not in point.

Plaintiff also asks to have the decree modified to give plaintiff a contingent decree for specific performance against defendant for a conveyance of his title on payment of the contract price, if plaintiff elects to accept it, but there are two objections to such a decree: (1) Plaintiff should have elected whether he will accept before he asked for the decree. (2) The issues cannot be made up in this court. Defendant is brought into court on the contention that he must accept a reduced price for the property because he cannot give a clear title, and, as he is contesting that claim, it would be unjust to him to involve him in the litigation and costs of the case on an issue not before the court.

The petition is denied.

REVERSED: SUIT DISMISSED: REHEARING DENIED.