JOHN H. LONG,

*vs.*

WILLIAM B. CHANDLER.

*Sussex, Sept.* 15, 1914.

Specific performance of a contract for the sale of land is favored because of the character of the subject-matter of the agreement, and while the power to decree specific performance is exercised in the discretion of the court, in a clear case it is freely exercised.

An outstanding inchoate right of dower is an "incumbrance," so that a vendor cannot convey a free and clear title unless his wife executes the deed with him, or otherwise waives or releases her dower.

No decree for specific performance can be made to affect the rights of the wife of a vendor who was not a party to his contract, and is not a party to the suit.

Where a vendor is unable to convey a good and unincumbered title according to his agreement, the vendee generally has a right to specific performance with an abatement of the purchase price, but not unless the compensation for the defects can be ascertained with reasonable accuracy.

A defect in the title of a vendor is not a defense to a suit for specific performance by the purchaser, if the purchaser chooses to accept the defective title without abatement in the price.

Where the wife of a vendor who did not join in his contract of sale refuses to join in a conveyance, or to release her dower rights, the court cannot make a decree of specific performance requiring the vendor to obtain a release of her rights under penalty of imprisonment for failure to do so, as this would clearly be an unjust coercion of the wife's volition.

Where a vendor's wife who did not join in his contract of sale refused to join in the deed, or to release her dower rights, specific performance with an abatement in price, because of the existence of her rights, could not be decreed, since because the quantum of her rights is not acsertainable until the husband's death, and because of the double-contingency of her survivorship of him, the present money value of her rights cannot be fairly and justly estimated, especially where it does not appear that the parties to the contract cannot be put in *statu quo.*

Where the wife of a vendor who did not join in his contract of sale refused to join in the deed, or release her dower rights, the court could not decree specific performance and require the vendor to give a bond to indemnify the purchaser against the wife's claims, as a bond without surety would be of no more value than the vendor's covenant, which would not be a sufficient protection to the purchaser, while to require a bond with surety would be to make for the parties an agreement which they did not make, especially where it does not appear that the parties cannot be put in *statu quo*.

In a suit for specific performance of a contract for the sale of land in which the vendor's wife did not join, with an abatement in the price, or the execution of a bond to indemnify the purchaser against the wife's claims, though such relief must be denied, the vendor, whose failure to make sure that his wife would join him in performing the contract compelled the purchaser to seek relief in court, would be required to pay the costs.

BILL FOR SPECIFIC PERFORMANCE. The bill was filed by a vendee against the vendor for specific performance of a contract of sale of land, with an abatement of the price based on the value of the inchoate right of dower of the wife of the vendor, who refused to join him in a conveyance of the land, or with an order requiring the defendant to give bond with surety to indemnify the complainant against a claim of the wife of the defendant for dower in the land.

The pleadings and facts appear from the opinion of the Chancellor, the case being heard on bill, answer and depositions.

*Charles W. Cullen*, for the complainant.
*John M. Richardson*, for the defendant.

THE CHANCELLOR. The complainant, Long, as vendee, by his bill seeks from the defendant, Chandler, as vendor specific performance of a contract for the sale of a lot of land in Dagsboro, evidenced by a receipt in writing dated July 3, 1913, whereby Chandler acknowledged payment to him by Long of five dollars as part payment of the purchase price of the land for seven hundred dollars for "a free and clear title." It is alleged that the seller refused to convey to the buyer, though the balance of the price was tendered, pretending that he was unable to make a good title, and that a good title could have

been made if the defendant had thought proper to do so. The prayer of the bill was that the defendant be required to specifically perform by conveying a good and marketable title to the land on payment of the balance of the purchase price. Nothing is said in the bill about the refusal of the wife of the defendant to join in the deed. By his answer the defendant admitted the making of the contract and the tender of .the balance of the purchase price. He further said he was unable to convey a free and clear title because his wife had refused to join him in a deed or to release her dower, without collusion with him, or solicitation on his part; and that he was ready to convey the land without his wife, and offered to refund the part of the purchase price received, but that the complainant refused to accept the conveyance tendered, or the money. Later the complainant amended the prayers of the bill by adding the following:

"That a decree may be made, directing the said defendant to execute and deliver a deed to your complainant for the lands and premises in said bill mentioned and further that the said defendant execute and deliver to your complainant a bond, with sufficient surety, and in such sum as may be necessary to protect your complainant from any claim that the wife of said defendant may have in said property to dower therein, should she survive her husband, or that an abatement in the price or amount of the purchase money agreed upon for said premises, may be made, the amount to be fixed and determined upon by a master appointed for that purpose or in such other manner as the Chancellor may determine."

The prayer, then, is for conveyance with a bond of indemnity with surety, or an abatement in the price.

Upon the issues joined testimony was taken by depositions and in general the allegations of the bill and answer were sustained. It was shown that Chandler was thirty-one years of age and his wife twenty-four years old. Whether there were children of the marriage did not appear, or whether or not the seller had any kin or heirs at law. Whether Long knew that Chandler was married when he made his contract does· not appear affirmatively and distinctly, but it is a reasonable inference, from the facts shown, that he had such knowledge. It was shown that Chandler's wife was informed of the agreement

after it had been made, and on the afternoon of the same day, and the only reason for her refusal to execute the deed with her husband was stated by her in her testimony to be that she did not want to make her husband's mother mad, meaning thereby a desire to avoid incurring the anger of her mother-in-law, who opposed a carrying out of the agreement. There was on the record no evidence of martial influence, and on the contrary it was denied, and there was no evidence of collusion or fraud on the part of either Chandler or his wife. There was no question raised as to the sufficiency of the form of the contract as containing the elements necessary for an enforcement thereof in this court, and it will be treated as such.

The question is thus raised squarely in this case: Is a purchaser entitled to specific performance of a valid contract for the conveyance of land with either an abatement of the price *pro tanto* for an outstanding inchoate right of dower, or to a decree requiring the seller to give indemnity against a future claim of such a right? In this State specific performance of a contract for the sale of land is favored because of the character of the subject-matter of the agreement. This equitable power is exercised in the discretion of the court, but in a clear case it is freely exercised. The precise question is novel here, and so far as appears is now raised for the first time. It is of grave importance to the business interests, for it is not improbable that other such contracts have failed of performance under similar circumstances, and injustice has resulted. It is clear and is so settled, that an outstanding inchoate right of dower is an incumbrance, so that in this case the husband as seller could not convey a free and clear title unless his wife executed the deed with him, or otherwise waived or released her dower in the way provided by law. It is also true that not being a party to the contract or suit no decree could be made to affect her rights. Indeed, it is doubtful if the agreement could be enforced against her even if she had been a party to it, as it was not a contract concerning her sole and separate property, and was not acknowledged before a notary public in the method provided by statute. This was so held in *Young v. Paul*, 10 *N. J. Eq.* 401, 64 *Am. Dec.* 456. But on this point no definite

opinion is expressed and mention is made of the matter purely as a precaution against misunderstanding.

So far as appears, the only expression of the courts of this State, even remotely, bearing on the precise question raised in this case is a statement by Chancellor Bates in *Godwin v. Collins*, 3 *Del. Ch.* 189, 199. There specific performance was sought of a contract where there was no security to the seller for deferred payments of the purchase money, and the Chancellor refused to require the seller to accept security however adequate because it would be to make a contract for the parties rather than to execute one made by them. He then said:

"There are, indeed, a few cases, altogether exceptional, in which the court has, in decreeing specific performance, imposed upon a party some terms not stipulated for in the contract. That has been done when a performance having been partially made, and its completion according to the strict terms of the contract has become impracticable; as through some defect of title or outstanding incumbrance, or change in the condition of the property. In such case where the parties have already acted under the contract and their interests have become so involved that they cannot be put in *statu quo*, the court, in order to prevent gross injustice, will complete the execution of the contract, making such equitable adjustment between the parties by way of compensation or indemnity as circumstances may admit of."

Two cases are cited by the Chancellor, viz., *Davis v. Horne*, 2 *Sch. & Lef.* 340, and *Young v. Paul*, 10 *N. J. Eq.* 401, 64 *Am. Dec.* 456, as illustrations. The first case could not be found. In the latter case, in New Jersey, the defendant agreed to convey to the complainant a farm in exchange for another farm owned by a third person, in case the complainant would buy it and convey it to the defendant, and pay a sum of money in addition. After the complainant had bought the farm from the third person and tendered to the defendant a deed therefor with the money, the defendant's wife, by his interference, refused to join in the deed by the defendant to the complainant for the defendant's land. The Court of Chancery required the defendant to convey to the complainant by deed, even if his wife would not join in it, and decreed that the complainant hold the farm he had bought for exchange with the defendant

as indemnity against any future claim of the wife. This was considered an exceptional case, because the decree did not affect the wife or necessitate the giving of collateral security, and, of course, did not involve a valuation of the dower as a basis of an abatement of the price. The decree was affirmed by the Court of Errors and Appeals of New Jersey, holding that the indemnity was fair and better than compensation. This case, cited by Chancellor Bates as one of the class of exceptional cases where indemnity to the vendee would be required, does not indicate that Chancellor Bates would in the present case have favored indemnity to the complainant, Long, and certainly not an abatement of price. The Court of Errors and Appeals in affirming the decree in *Godwin v. Collins*, in 4 *Houst.* 28, based its decision on the uncertainties of the agreement in that case and the omission of security for deferred payments of the price, holding that in the absence of part performance or fraud it had no right to supply an omission or impose terms not in the contract. No reference was made by the appellate court to the portion of the opinion of Chancellor Bates above quoted. It is very doubtful if it would have favored indemnity or an abatement of price in a case like that under consideration here. If Chancellor Bates' dictum be followed there could be no decree for abatement or indemnity, because it does not appear that the parties to the contract cannot be put in *statu quo*, and the decision might be based on the opinion of that distinguished jurist. But as the questions involved have been so fully discussed, the question will be considered as though there was no guiding precedent here respecting the question raised.

It is a general, though not a universal, rule that where a vendor is unable to convey a good and unincumbered title, according to his agreement, the vendee has a right to specific performance with an abatement of the purchase price. Lord Eldon in the early English case of *Mortlock v. Buller*, 10 *Ves. Jr.* 292, 315, thus states the matter:

"* * if a man, having partial interests in an estate, chooses to enter into a contract, representing it, and agreeing to sell it, as his own, it is not competent to him afterwards to say, though he has valuable interests,

he has not the entirety; and therefore the purchaser shall not have the benefit of his contract. For the purpose of this jurisdiction, the person contracting under those circumstances, is bound by the assertion in his contract; and if the vendee chooses to take as much as he can have, he has a right to that, and to an abatement; and the court will not hear the objection by the vendor, that the purchaser cannot have the whole."

The case of *Godwin v. Collins*, 3 *Del. Ch*. 189, 199, supports this general rule. There are some limitations upon the rule. If the vendee had notice that the vendor had a limited interest in the land, or that the title is defective, or the quantity defective, some courts have denied the right to abatement. So also, of course, an abatement is denied unless the compensation for the defects can be ascertained with reasonable accuracy. There may be some other limitations upon the general rule, but it is not necessary to discuss them. It is also true that if the vendee chooses to accept a defective title without abatement in the price, the defect in the title is not considered to be a valid defense to a decree for specific performance on a bill brought by the purchaser. There is, however, an irreconcilable conflict of authority as to whether this general principle above referred to is applicable to cases such as the one now under consideration.

Without undertaking to classify all the cases on the subject, the decisions range themselves about in this way. In Massachusetts a decree for specific performance by the husband was ordered with proper damages to the vendee for the failure of the wife of the vendor to convey her dower, and it was referred to a master to report as to the damages. *Park v. Johnson*, 86 *Mass*. (4 *Allen*) 259; *Woodbury v. Luddy*, 96 *Mass*. (14 *Allen*) 1, 92 *Am. Dec*. 731. In Iowa abatement of the price is allowed. *Townsend v. Blanchard*, 117 *Iowa* 36, 41, 90 *N. W*. 519; *Thompson v. Colby*, 127 *Iowa* 234, 103 *N. W*. 117; *Noecker v. Wallingford*, 133 *Iowa* 605, 111 *N. W*. 37. Two cases in Iowa hold that interest is not charged against the vendee for the amount he retained. *Presser v. Hildenbrand*, 23 *Iowa* 483; *Leach v. Forney*, 21 *Iowa* 271, 89 *Am. Dec*. 574. In Wisconsin the difficulty of estimating the money value of inchoate dower is minimized and abatement allowed.

*Wright v. Young*, 6 *Wis.* 127, 70 *Am. Dec.* 453. In Minnesota the same rule prevails. *Drake v. Barton*, 18 *Minn.* 414; *Sanborn v. Nockin*, 20 *Minn.* 163. So also in Indiana. *Martin v. Merritt*, 57 *Ind.* 34, 26 *Am. Rep.* 45. And in Michigan, *Walker v. Kelly*, 91 *Mich.* 212, 51 *N. W.* 934.

In North Carolina the tables of mortality are deemed sufficient evidence of value of inchoate dower, notwithstanding the double contingency involved. *Bethell v. McKinney*, 164 *N. C.* 71, 80 *S. E.* 162 (1913); *Gore v. Townsend*, 105 *N. C.* 228, 11 *S. E.* 160, 8 *L. R. A.* 443.

In Alabama the abatement as to price is regarded as indemnity, not compensation, and, the purchaser is chargeable with interest on the amount deducted and reserved until the death of the vendor or his wife. *Minge v. Green*, 176 *Ala.* 343, 58 *South.* 381 (1912). There was in this case a vigorous dissenting opinion which forcibly pointed out the many elements of uncertainty in calculating the present value of inchoate dower under the Alabama statutes as to dower, the two dissenting judges claiming it to be an impossibility for any human agency to approximate such value.

The decisions of the courts which have taken different views are those of Illinois, New York, New Jersey, Oregon, Ohio, Virginia, Pennsylvania, Missouri and District of Columbia, and they support the following propositions:

(1) If there be no proof of fraud on the part of the husband in the refusal of the wife to release dower, the court will not order the husband as vendor to procure a conveyance or release by her, or require him to furnish an indemnity against her dower. *Reilly v. Smith*, 25 *N. J. Eq.* 158; *Blake v. Flatley,* 44 *N. J. Eq.* 228, 10 *Atl.* 158, 14 *Atl.* 128, 6 *Am. St. Rep.* 886; *Peeler v. Levy*, 26 *N. J. Eq.* 330, 335, 336; *Bateman v. Riley*, 72 *N. J. Eq.* 316, 73 *Atl.* 1006; *Graybill v. Brugh*, 89 *Va.* 899, 17 *S. E.* 558, 560, 21 *L. R. A.* 133, 37 *Am. St. Rep.* 894.

(2) A Court of Chancery should not directly or indirectly, or even remotely, coerce a wife to release her rights, or even make a decree which would put pressure on her to surrender her free and untrammeled volition, and an abatement of the price or a requirement of indemnity would be coercion. *Riesz's*

*Appeal*, 73 *Pa. St.* 485, 490; *Burk's Appeal*, 75 *Pa. St.* 141, 147, 15 *Am. Rep.* 587; *Burk v. Serrill*, 80 *Pa. St.* 413, 418, 21 *Am. Rep.* 105; *Clark v. Seirer*, 7 *Watts* (*Pa.*) 107, 110, 112, 32 *Am. Dec.* 745 (C. J. Gibson); *Aiple-Hemmelmann, etc., Co. v. Spelbrink*, 211 *Mo.* 671, 111 *S. W.* 480, 14 *Ann. Cas.* 652; *Kuratli v. Jackson*, 60 *Or.* 203, 118 *Paç.* 192, 1013, 38 *L. R. A.* (*N. S.*) 1195, *Ann. Cas.* 1914A, 203; *Barbour v. Hickey*, 2 *App. D. C.* 207, 24 *L. R. A.* 763.

(3) If the vendee knew that the vendor had a wife, he took chances of her signing the deed, and is not entitled to relief respecting the wife's interest. C. J. Gibson in *Clark v. Seirer*, 7 *Watts* (*Pa.*) 110, 112, 32 *Am. Dec.* 745; *Burk's Appeal*, 75 *Pa. St.* 141, 15 *Am. Rep.* 587; *Fortune v. Watkins*, 94 *N. C.* 315; *Lucas v. Scott*, 41 *Ohio St.* 636, 641; *People's Savings Bank v. Parisette*, 68 *Ohio St.* 450, 67 *N. E.* 896, 96 *Am. St. Rep.* 672; *Aiple-Hemmelmann, etc., Co. v. Spelbrink*, 211 *Mo.* 671, 111 *S. W.* 480, 14 *Ann. Cas.* 652.

(4) The value of inchoate dower cannot be properly valued and mortality tables are inadequate for the purpose. *Cowan v. Kane*, 211 *Ill.* 572, 575, 576, 71 *N. E.* 1097; *Sternberger v. McGovern*, 56 *N. Y.* 12, 19, 20; *Aiple-Hemmelmann, etc. Co., v. Spelbrink*, 211 *Mo.* 671, 111 *S. W.* 480, 491, 14 *Ann. Cas.* 652; *Kuratli v. Jackson*, 60 *Or.* 203, 118 *Pac.* 192, 1013, 38 *L. R. A.* (*N. S.*) 1195, *Ann. Cas.* 1914A, 203.

(5) To decree specific performance with indemnity would be making a new contract for the parties. *Barbour v. Hickey*, 2 *App. D. C.* 207, 24 *L. R. A.* 763; *Kuratli v. Jackson*, 60 *Or.* 203, 118 *Pac.* 192, 1013, 38 *L. R. A.* (*N. S.*) 1195, *Ann. Cas.* 1914A, 203.

A fuller statement of the varying decisions on both sides of the question is found in 36 *Cyc.* 743 *et seq.*

The Oregon court in *Kuratli v. Jackson*, cited above, remarked that the variance in the decisions may be partially accounted for by the fact that courts favoring an abatement of the price are those of states where law and equity are administered by the same court and distinctions of procedure between them have been abolished, while the opposite view is taken in states where law and equity courts and their procedure are

kept separate. There may be the further reason that in some states conversion of dower rights into money value by appraisement is done by statutes and apparently the mortality tables and other methods of valuation of contingent rights are provided by statutes, none of which exist in Delaware.

It is settled now that this court has no right to make a decree requiring the vendor to obtain a release of the rights of his wife under penalty of an imprisonment for failure to do so, for this would clearly be an unjust coercion of the wife's volition. By his bill, and the amendments to the prayers thereof, the complainant asks for a decree for specific performance by the husband vendor with either an abatement of the purchase price based on a valuation of the wife's inchoate interest, or security from the vendor to the vendee against the assertion by the wife of her right in and to the property in case she survives her husband.

As to abatement. There is some merit in the proposition that if the vendor agrees to convey more than he owns, or can convey a good title to, he should at the demand of his vendee be required to convey what he has with an abatement in the price based on the value of that which he is unable to convey, provided this value may be ascertained with reasonable certainty and with justice to both buyer and seller, and provided the rights of other persons not parties to the contract are not affected by such a decree. In so holding there is no imposition on the parties of a new contract. A purchaser could not be forced to accept such a decree, but on his demand the seller would in equity be bound to do all he could to execute his agreement. However, an essential element to such an abatement of price is reasonable certainty in the valuation of the outstanding interest, and it is necessary to know the quantum of the thing to be valued. When the husband, as owner, makes the contract of sale of his land without his wife joining in it, her interest is not affected. What is her interest in that land in his lifetime? It was said in the case of *Chandler v. Hollingsworth*, 3 *Del. Ch.* 99, 114, that although her right in her husband's lifetime is inchoate only, "it is none the less, in his lifetime a legal right, vested and indefeasible, except by her

own act." What are her rights in this State if she survives her husband? At common law there were only three circumstances necessary to dower: Seisin of the husband, coverture and survivorship by the wife. These being present her interest was fixed and beyond reach, whatever may happen to the husband, or whatever he may have done, unless she relinquished her rights by her voluntary act according to the laws of the State, or forfeit it by misconduct. She was entitled to one-third part of his land for her life. This right was further assured to her by the Act of 1816, which secured her against alienations, debts, liens and incumbrances made or created by the husband after marriage. *Section* 1, *c.* 87, *Revised Code, p.* 662. By another statute, in case her hsuband died intestate, and left a widow and any child, or lawful issue of such child, the widow is given one-third of his real estate for life as tenant in dower; or if there be no child of the intestate, or issue of such child, the widow takes one-half of the land for life; or if there be no kin or heir of the intestate, she can hold all of the real estate for life. Provision is made for her to have assigned to her in severalty her share of the land, and if her husband be sole owner of the land there is no provision whereby she can be required to take her interest in the land in money in lieu of land after a valuation. If there be a devise of land to her by her husband, she has her election and can be required to elect between dower or the estate devised. If she survives her husband, and he owns several tracts of land and seeks her dower, it may be assigned to her in one lot, or parts of each may be assigned to her, so that it never can be known in his life, or until after an assignment in kind, which of several parcels of land will be affected by the assignment to her. The deed of a married woman made during coverture is not valid unless upon private examination apart from her husband she acknowledge before designated officers that she executed it willingly, without compulsion, or threats of her husband's displeasure. Such are her rights, and such are the safeguards and protection given to them.

The present money value of the dower rights of a wife in her husband's life cannot be fairly and justly estimated, because

the quantum of it is not ascertainable until his death, and because of the double contingency of her survivorship of him, and, therefore, there can be no decree for a conveyance by him with an abatement of the purchase price. Clearly the quantum cannot now be ascertained. It does not appear whether there is now a child, or issue of a deceased child, of the marriage; and even if there was such now, the quantum of her estate depends on the testacy or intestacy of her husband and upon there being a child or issue of a child, or the existence or non-existence of kin or heir of her husband in case of intestacy. The only thing now fixed beyond change is that she has an interest in one-third of all the land of which her husband is, or has been seised during coverture, unless she has validly relinquished her right. Even this interest is contingent on survivorship. But her right may be larger than one-third, as above indicated. To base the abatement of price on her present right would not be just to the buyer. Indeed, even with an abatement of the price, he would not be protected, for if she survived her husband and he was seised of more than one parcel of land, the land in question might be assigned to her for life as her dower and the purchaser would be at her mercy. Again, if the husband was seised of this lot only, she might have assigned to her a part of it, a third, or a half, or all, depending on circumstances as above indicated.

In addition to the uncertainty as to the quantum of her estate, or interest, the inadequacy of the methods of calculating it. are an insuperable objection to decreeing an abatement based on a valuation. When her contingent interest becomes vested and ascertained, its value in money is calculable with reasonable accuracy according to established mortality tables. But in her husband's lifetime the added element of the uncertainty of her survivorship, even when their respective ages are considered, is a real obstacle to a just valuation of her interest. The weakness of the rule for ordering a conveyance with an abatement in the price is shown by the contradictory positions taken by courts which so hold, as to whether interest on the price abated is to be charged against the vendee during until either the husband or wife die. The decisions of the courts of

other states are not helpful in reaching a conclusion on this branch of the case, because the rights of married women in their husbands' property vary widely, and it is difficult to ascertain from the reports what in each case these rights are.   The dissenting opinion in the case of *Minge v. Green*, above cited, is of much assistance on the question of abatement of the price.

As to indemnity.   All of the reasons against requiring a conveyance with an abatement of the price do not apply to the prayer for indemnity against the wife's claim.   Indemnity may be required of the vendee, though the exact quantum, or reasonably approximate value of the wife's interest is unascertained or unascertainable, for the indemnity would be made large enough to cover all contingencies.   But there are reasons why this court should not decree it.   It would not be full protection if it be less than the full amount of the purchase price, because it may result that this land will be assigned to her to hold for life as dower.   The chief objection, however, is that it is making for the parties an agreement which they did not make. A covenant in the deed of the vendor would not be a sufficient protection.   *Young v. Paul*, 10 *N. J. Eq.* 401, 64 *Am. Dec.* 456. The complainant, Long, asks for more, viz., a bond of indemnity with surety.   A bond without surety and sufficient surety would be of no more value than a covenant.   No case has been cited, or found, where a court of equity has required a vendor to give a bond of indemnity with surety in such cases.   Chancellor Bates cites an illustration of a case of ordering indemnity, the case in New Jersey of *Young v. Paul, supra*, where the court, to avoid ordering collateral security, allowed Paul to retain as indemnity for what Young could not convey the land which he (Paul) had agreed to convey to Young in exchange.   The absence of a case where indemnity with security is ordered is significant, it would seem.   On the whole, then, it does not seem wise to extend the powers of this court by requiring a vendor to do what he has not agreed to do.

The knowledge by the vendee of the marriage of the vendor does not seem to be as important an element as some courts have considered.   When one negotiates with a married man he may rightly assume the existence of such harmony between

husband and wife that she would join in performing his contracts of sale and the purchaser cannot be held to have taken chances on her doing so. Particularly is this true if her joining in the agreement did not subject her to the liability of a decree for specific performance of the contract. There being other reasons for denying the right of the complainant to the relief asked for, his knowledge of the marriage of the vendor will not be considered in this case an added reason for so doing, particularly if it be uncertain whether, or not, the purchaser knew of the marriage.

Undue importance seems to have been given to the coercive weight of a decree of abatement of the price, or even a requirement that the husband indemnify the vendee against his wife's claim. In some cases such a decree is objectionable on that account, and there are substantial authorities to that effect. But it is clearly unimportant in this case, for the reason assigned by the wife of the vendor is so pitiably inadequate as to show her to be impervious to moral considerations and a fit subject for coercion. If she had assigned no reasons for a refusal to sign the deed, good ones might be imagined. She was not bound to give any reasons, but could have relied on her rights. But having given palpably insufficient ones, which may not be the real ones, she is not entitled to much consideration from this court.

Another objection to both abatement and indemnity is the effect on the marketability of the land. Even if the vendee gets a title and pays less for it because of the wife's outstanding possible claim, it is still unmarketable freely, for few would voluntarily buy a title so incumbered. The same applies in a lesser degree to indemnity. In the case of *Roos v. Lockwood*, 66 *App. Div.* [*N. Y.* (59 *Hun.*)] 181, 13 *N. Y. Supp.* 128, the court said:

"Such an arrangement, moreover, renders the title exceedingly unmerchantable for an indefinite period."

The complainant is entitled to a decree for specific performance by the husband alone, but the defendant will not be

required, as prayed for by the complainant, to convey the land with an abatement of the price, or with a bond of indemnity to the complainant to protect him against any claim of the wife of the defendant in case she survives her husband, because (1) it does not appear that the parties to the contract cannot be put in *state quo;* (2) the quantum or value of the wife's right and interest is not now calculable with sufficient accuracy to justify an abatement of the price; and (3) to require the seller to give a bond of indemnity with surety would be making a new contract for the parties and not enforcing the one made by them. As the complainant cannot have the relief asked for, the bill is to be dismissed and the complainant left to pursue any other remedy he may have at law.

Upon whom should the costs of the cause be imposed? Not necessarily on the complainant, though he be unsuccessful in the suit. Inasmuch as the defendant by not having made sure that his wife would join him in performing his contract with the complainant has compelled his vendee to seek relief in this court, the responsibility for the costs seems to be on the defendant, and fuller justice would be done by requiring him to pay the cost of testing the right of his purchaser to relief here sought.

A decree will be made dismissing the bill and requiring the defendant to pay all the costs of the cause.