EMILIA M. DEBARTOLOMEIS,

*vs.*

HUMBERT MICHINI and ANNA MICHINI.

*New Castle, July 24, 1935.*

*Daniel De Pace,* of the firm of De Pace & Errigo for complainant.

*J. La Penne Guenveur,* for defendants.

THE CHANCELLOR: The written contract by which the complainant agreed to sell her lot to Humbert Michini obligated the latter to build a garage on the rear of the lot and to convey the garage with a right of way thereto by good and sufficient deed to the complainant in fee simple. Anna, the wife of Humbert, was not a party to the contract either in point of form or in fact.

If this bill were one to compel the defendant, Anna, to join with her husband in a deed conveying a garage and right of way located on the land which the written contract described, thereby alienating her inchoate right of dower, it could not be maintained. *Long v. Chandler*, 10 *Del. Ch.* 339, 92 *A.* 256.

Such is not the bill, however. It is even more stringent in its demand upon the wife, for it seeks to compel her to join in making a deed for a garage and right of way located on other land which is and, at the time the written contract between the complainant and Humbert was entered into, was the property of Humbert and his wife, Anna, as tenants by the entirety.

The evidence of the complainant shows that Humbert entered into a parol engagement with the complainant to convey the garage now sought to be acquired in substitution for the one originally contracted for. This agreement was made after the complainant had conveyed her land as called for by the original contract. The defendant, Anna, was not a party to that agreement. The complainant, notwithstanding the allegation of her bill to the contrary, admits that fact. The most that is shown is some vague admission by Anna that the garage in question was the complainant's. This admission is very much weakened by the complainant's own testimony that Anna said to her, on the only occasion when she talked with her about the matter, "if anything happens to me, if I should die, you would chase my children out of here; my children would have no more property."

But what does an alleged admission amount to when the complainant herself expressly testifies that Anna was not present when the parol agreement was made and was not a party thereto?

If Anna could not be compelled to join in a deed releasing her inchoate dower right in property which her husband acquired, *a fortiori* she should not be compelled to join in a deed conveying other land owned by her and her

husband as tenants by the entirety in satisfaction of her husband's separate parol agreement.

The solicitor for the complainant argues that Anna is estopped from denying her duty to convey. The estoppel contended for rests on the following facts: Nearly two years and a half after the complainant conveyed her lot to Humbert in obedience to the contract, Humbert had the title placed in himself and wife as tenants by the entirety. The defendants owned an adjoining lot as tenants by the entirety upon which they desired to erect a home. They did so, erecting the home on the lot acquired by Humbert from the complainant and using the lot which they had previously acquired as a side yard, with two garages in the rear. Thus joining the two lots in one as a home site, they evidently desired to hold the later acquired one in the same title by entirety as they did the other one. This was especially desirable as they were obliged to raise seven thousand dollars by mortgage on the two lots in order to finance the building of a home. They executed a mortgage in that amount and constructed the home.

On these facts, the complainant contends that Anna is estopped from denying her obligation to fulfill the terms of her husband's parol agreement to substitute a garage located on the old lot for one on the new as called for by the written agreement. Her solicitor cites the following cases: *Konnerup v. Frandsen*, 8 *Wash.* 551, 36 *P.* 493; *Fowler v. Burke*, 13 *Wash.* 13, 42 *P.* 624; *Whiting v. Doughton*, 31 *Wash.* 327, 71 *P.* 1026; *Overman v. Hathway*, 29 *Kan.* 434. In one of them (31 *Wash.* 327, 71 *P.* 1026), the wife joined in suing on the contract which her husband made and which embraced her half interest in the land, knew of the contract when it was entered into, was aware of the payment of the money, and allowed the defendant to enter into possession and make valuable improvements. Under these circumstances the court held that the wife had accepted and ratified the contract. The case from 13 *Wash.* 13, 42 *P.* 624, involved at most the sale of a mere possessory

interest in land which, it was held, so far as the husband and wife were concerned, was lost upon the moment of its surrender to the vendee. Manifestly, that case is of no pertinency here. In the case from 8 *Wash.* 551, 36 *P.* 493, the land was community property, the husband with the knowledge and consent of the wife contracted to sell the entire community interest in consideration of the vendee's clearing other community land. The wife stood by and allowed the vendee to do the labor of clearing the other land, ratified the vendee's every act and accepted the benefits of his labor. The court held she was estopped to deny the contract was binding on her. The case from 29 *Kan.* 434, was quite similar to the one just reviewed.

In the instant case the circumstances are in no wise similar to those in the cited cases and therefore the principle of those cases is not evoked. So far as appears, the husband transacted his business with the complainant without either the consent or even the knowledge of his wife. Whatever knowledge she had was obtained after the event. This is so whether we refer to the written contract or to the subsequent parol contract, the one now sought to be enforced. Unlike those cases, this is not one where a wife stands by and sees a vendee of her husband's land prejudice himself by making expenditures for extensive improvements on the faith, as she well knew, of her own assent to and acquiescence in the contract of sale which her husband made. The complainant here of course made no improvements. The case is one where a husband entered into a sole agreement to convey one piece of land to the complainant, decided not to perform that agreement, and then made another parol agreement to convey to the complainant land in which his wife had an interest in satisfaction of his breach of the first agreement—to all of which arrangements his wife was not a party and of which, so far as appears, she was not informed until after they were fully agreed upon . The husband gratuitously assumed to possess a greater control over his wife's property rights than she, when informed of

his acts, was willing to concede. There was no agreement on her part. There was no conduct, active or passive, on her part which led the complainant to alter her position for the worse on which any theory of estoppel can be rested.

The bill will be dismissed.

The complainant asks that, if the bill be dismissed, the defendant, Humbert Michini, be nevertheless decreed to pay the costs. *Long v. Chandler,* 10 *Del. Ch.* 339, 92 *A.* 256, is cited in justification of this request. In that case it is not clear that the complainant, when he filed his bill, knew that the defendant was married and that his inability to make title was due to his wife's refusal to join in the deed. The wife was not a party to the cause. Furthermore, in the case of *Long v. Chandler,* when the fact of coverture was averred in the answer, the complainant amended his prayer for relief by asking for a decree for specific performance against the husband, the only party defendant, with a provision for either abatement of the price or for idemnity on account of the wife's outstanding inchoate right of dower. Under these circumstances, the Chancellor considered it equitable that the defendant, though the successful party should pay the costs.

What distinguishes that case from the one *sub judice,* is this—the complainant knew that her vendor was married and, as her own evidence shows, that Mrs. Michini would not join in a deed. There is no suggestion that her refusal was thought to be a pretense. There was no serious question of right to be tested by this case as there was in that one. I am unable to see how it would be just to tax the defendant, Humbert, with the costs, when he had fully and frankly informed the complainant of the insuperable obstacle to his performance which was beyond his power to remove and had offered to make compensation in damages for his failure to perform. So far as appears, when the refusal of his wife became fixed, he did the best he could to satisfy the complainant. She refused to entertain his suggestion of compensation in lieu of impossible

performance. She filed her bill in the face of those facts, and I think she should pay the costs.

The motion for a decree of dismissal for want of sufficient testimony to sustain the allegations of the bill will be granted.

Decree accordingly.