# JULIA W. RUTLEDGE *vs.* JOHN R. RUTLEDGE
## ET AL.

*Lunatics: sale of land; for investment, etc.; for payment of debts; for support and maintenance. Code provisions: Art. 16, secs. 114-121. Void sales: right to purchase money; claim of devisee of land; estoppel.*

The powers given to Courts of Equity by sec. 114 of Art. 16 of the Code (1912) for directing the affairs of persons *non compos mentis*, as to the custody of their persons and the management of their estates are limited by the provisions of the subsequent sections which prescribe what is necessary to be done before any of the property of such persons can be sold or disposed of.                    p. 556

After inquisition found, a lunatic cannot himself contract debt; and the application of creditors for the sale of any of a lunatic's real or personal estate for the payment of his debts, under sec. 115 of Art. 16, may be granted, only when the debts were contracted and existed before the inquisition, unless they constitute liens, etc., upon the property.    p. 556

Since the Act of 1894, Ch. 281 (secs. 116, 117 and 118 of Art. 16 of the Code of 1912), the guardian, committee or trustee of the *property* of the lunatic can apply for its sale for investment, lease, etc; but the trustee or committee for the management of the *person and estate* of a lunatic is the proper party to apply for its sale for his support and for the payment of expenses incurred for him by his committee.

p. 560

Under sec. 121, when the custody of both the person and estate of a lunatic are entrusted to the same trustee, etc., he is under the jurisdiction of the Court and subject to its decrees; in order for the Court to order a sale of whatever part of the estate may be necessary for the payment of debts incurred by the trustee for maintenance and support of lunatics, there is no need for instituting adversary proceedings against the lunatic as required by sec. 118.                    p. 559

Where a petition prays that a committee be appointed for the person and estate of a lunatic, and the decree appoints a committee of his estate only, it is not to be assumed that the Court intended also to appoint them a committee of his person.                    pp. 560-561

If the sale of the real estate of a lunatic or some part thereof is to be made under said sec. 118 for the lunatic's support, or for the payment of expenses incurred by him by his trustee, there must be an application to the Court showing the object and necessity for the sale, with proof as in other chancery cases.                    p. 561

Even though it may not always be necessary to file exhibits with the application for a sale for such a purpose, yet where there are no chancery proceedings there should at least be something of record to show the purpose of the sale; and the mere assertion that the committee believes the sale to be for the *"interest and advantage"* of the lunatic is not sufficient.                    p. 561

The devisee of all the real estate of a lunatic filed a petition alleging, that the committee having charge of his estate had in their hands the proceeds of a sale of the deceased lunatic's estate, which had been made by them, and to which pro-

ceeds of sale the devisee claimed she was entitled, and praying that the same be paid over to her; the bill was dismissed on the ground that the sale had effected a conversion of the real estate, and the committee was ordered to account with the *executor* of the lunatic for the proceeds. On appeal from that order *it was held* that the attempted sale was invalid, and did not operate as a conversion of the real estate; it was *further held* that if the petitioner, the devisee, accepted the purchase money, she would be estopped from asserting any claim to the land sold, and should execute a deed therefor to the purchaser or its assignee, under which the money, less the costs and expenses, etc., should be paid to the devisee.

p. 562

As the purchaser was not a party to the proceedings, *it was further held* that if it or its assignee desired the title to be so perfected they should come into Court and express their willingness to that effect.                    p. 562

*It was further held* that if the purchaser or its assignee should not, within a reasonable time after such a notice as the Court should prescribe, come into Court, and accept such deed, then the purchase money, less the interest, costs and expenses, and a reasonable sum as compensation for its use and injury to the land, should be returned to the purchaser or its assignee.

p. 563

One who seeks equity must do equity.                    p. 562

Where on appeal, an attempted sale of a lunatic's land was declared invalid, *it was held* that the costs should be paid out of the fund received from the sale, and not out of the estate, or by the committee individually.                    p. 563

*Decided November 13th, 1912.*

Appeal from the Circuit Court for Harford County, in Equity (HARLAN, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*John S. Young,* for the appellant.

*Philip H. Close* and *S. A. Williams,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

On the 1st day of March, 1910, Monica Ann Rutledge, was, by an inquisition of a jury, found to be of unsound mind and a lunatic, and not capable of the management of her property and estate. On the 12th of that month the inquisition was confirmed by the Circuit Court for Harford County, and Dr. Charles A. Rutledge and John R. Rutledge were appointed a committee of her estate.

On the 6th of April, 1910, a report was filed by the committee which recited that, in pursuance of leave granted by the Court under the order passed on that day, they reported a sale to the Susquehanna Pole Line Company of Harford County, for the sum of $1,200.00, of a parcel of land 100 feet wide, extending through the lands of Monica Ann Rutledge and which is therein particularly described. What is called an order of the Court was simply an endorsement on the report of sale of, "Leave granted to file this report," which was signed by JUDGE VAN BIBBER on April 6th, 1910. After the publication of an order *nisi,* the sale was ratified and confirmed on May 7th, 1910. In May, 1911, Julia W. Rutledge filed a petition stating that Monica Ann Rutledge had departed this life leaving a last will and testament by which she devised all of her real estate to the petitioner, and alleging that the committee had in their hands $1,200.00, being the proceeds of the sale of real estate, which she was entitled to as devisee under the will. An order was passed directing the committee to pay to her the said $1,200.00, unless cause to the contrary was shown. The docket entries show that each of the committee filed an answer. They are not in the record but a copy of the one of John R. Rutledge was by consent of counsel left with us. In it he admits that the committee have in their hands the $1,200.00, out of which certain expenses attending the sale should be paid, but denies that the proceeds of the real estate passed under the devise in the will, and alleges that by the ratification of the sale the proceeds of said real estate were converted into personal property and should pass under the will as such.

The Court passed a decree dismissing the petition, and declaring that the money in the hands of the committee arising from said sale was personal estate, from the ratification of the sale, and decreeing that the committee account with the executor of the will for the same after deducting therefrom such costs, expenses, fees or allowances as may have been theretofore or may thereafter be allowed by the Court, and the case was referred to the auditor. From that decree this appeal is taken.

In order that we can properly determine the questions involved, it will be necessary to consider the provisions of our Code, in reference to the sales of a lunatic's property. What is now section 114 of Article 16 of the Code (1912) gives the Courts of equity of this State large powers in superintending and directing "the affairs of persons *non compotes mentis,* both as to the care of their persons, and the management of their estates." But while the language of that section is broad, and was intended to confer large powers on Courts of equity, subsequent sections of that article prescribe what is necessary to be done before the property of such persons can be sold or disposed of. By section 115 the Court is authorized, on the application of a creditor, to decree a sale of the real or personal estate of a *non compos mentis,* or such part thereof as may be necessary, to pay the claim of the creditor, if the Court is satisfied of the justice of the claim and that there is no other means of paying it. It will be observed that that is done on the application of a creditor of the lunatic, and "As the lunatic himself cannot, after inquisition found, contract a debt, the claims of creditors must exist before the inquisition, or may consist of liens or incumbrances on his property. In cases where the creditor seeks to collect his debt, or enforce his lien, an adversary proceeding, such as is prescribed in section 83 (Code 1860) (now 118 of the Code of 1912), of the Code, is the proper one." *Estate of Dorney, Lunatic,* 59 Md. 67.

There was no such proceeding instituted for the sale of this property, and therefore, even if we could assume from

the meagre information furnished by the record that John
R. Rutledge and Charles A. Rutledge had claims against the
lunatic, it can not be said that the sale was made for the
purpose of paying debts due by her.   There was not even an
application filed by them, or either of them, as creditors for
the sale of any part of her estate, and nothing was done to
satisfy the Court of the justice of the claim, and that there
was no other means of paying the same.   It is manifest,
therefore, that this sale was not authorized on the ground
that the lunatic owed debts, and when it is remembered
that. the inquisition was ratified on the 12th day of March,
and the sale reported on the 6th day of April, 1910, it would
be difficult to find anything in the record to sustain the sug-
gestion made at the argument that the claim of John R.
Rutledge was for such support of the lunatic as would justify
a sale of property worth twelve hundred dollars at the in-
stance of the committee, for if John R. Rutledge's claim be
conceded or established, it would be as a creditor *against the
lunatic,* and not for her support or expenses incurred by the
trustee, after she was adjudged a lunatic, which are what
section 121 refers to.

Section 116 authorizes the Court to order or decree the
sale of any real, leasehold or personal property to which the
lunatic may be entitled, on the application of a guardian,
committee or trustee of the property of a person *non compos
mentis,* for the purpose of investing the proceeds as therein
directed, and section 117 confers power on the Court, upon
application of the guardian, committee or trustee, to order or
decree the real or leasehold property of the lunatic to be
leased, or to order or decree the surrender of any lease of the
estate or the property of such a person to be accepted, and
the same to be demised anew.   But section 118 distinctly
provides that in all applications by a guardian, committee or
trustee of the property of a person *non compos mentis* to sell
any of the real, leasehold or personal property of such per-
son, or to demise any of the real or leasehold property, or
accept the surrender of a lease thereof, "the Court shall,

before passing an order or decree, have proof taken as in other chancery cases as to the value, quantity and condition of the property, and after considering all the circumstances, if the Court shall deem it to the interest and advantage of such person *non compos mentis,* it may order or decree a sale, lease or surrender of a lease of the whole or any part of the said property on such terms and conditions as the Court may prescribe." Then section 119 provides, that "no sale, lease or surrender of a lease of the property, real or personal, of a person *non compos mentis,* shall be valid unless the same shall be reported to and confirmed by the Court."

It is not contended that the provisions of section 118 were complied with, but on the contrary the committee simply filed a report of sale, with the endorsement thereon as above stated. There was no application for authority to sell filed by the committee, and the report does not show the object of the sale. It may readily be inferred that the purchaser was buying the strip of land for the purpose of using it in connection with other property in constructing its line of wires, and, although there is no evidence in the record, we can perhaps assume that the committee and the lower Court believed that a large price was being obtained for it. It is claimed, however, that the Court can assume or infer that it was sold for the support of the lunatic, under the authority of section 121. In *Estate of Dorney, Lunatic, supra,* it was held that it was not necessary to adopt the proceedings required by what was then section 83 (now section 118) to enable the Court to order a sale of any of the property of the lunatic, for the purpose of paying his reasonable and just expenses. It was there said: "As the expenses of the lunatic are going on all the time, and as it would be improper in the Court to sell more of the property than would be sufficient to pay for the support and expenses of the lunatic, for the time being, the process might have to be repeated to the great cost of the estate. The custody of the person and property of the lunatic must have been already committed to the trustee before this 86th (now sec. 121 of Art. 16, Code of 1912)

section can apply, and he, the trustee, by virtue of his appointment, is under the control and jurisdiction of the Court, and subject to its orders, and we can see no good reason why he should institute an adversary proceeding against the lunatic committed to his charge to enable him to do what may be absolutely necessary for the lunatic's comfort and well being, and the security of his estate." If then we were only called upon to determine whether the Court could order a sale of a part of the lunatic's property for her support, or for the payment of all reasonable and just expenses, which the committee may have incurred, without the proceedings provided for in section 118 first being adopted, we would have no hestitation in holding that that could be done, but that is not the question in this case.

As pointed out by JUDGE McSHERRY, in *Hamilton* v. *Traber,* 78 Md. 26, the English Court of Chancery did not have power to decree a sale of the lunatic's real estate for his maintenance and support until that power was distinctly conferred by Acts of Parliament passed after the American Revolution, and it was not until the Act of 1800, Chapter 67, that Courts of equity of this State had such power. It was said in the case of *Estate of Dorney, supra,* that "The custody of the person and property of a lunatic must have been already committed to the trustee before this 86th (now 121st) section can apply," and in *Hamilton* v. *Traber, supra,* that "In a word, his *status* as a lunatic must first be established by the inquisition of a jury, and a guardian or committee of his person and estate must then be appointed according to law, before any proceeding can be taken by anyone to procure a sale of his estate for his maintenance, or for a change of investment."

In *Hamilton* v. *Traber* the provisions of Article 16 as they were found in the Code of 1888 were considered. Section 98 of that Article provided that "The Court upon the application of the guardian, committee or trustee of any person *non compos mentis* may decree the sale," etc., and that was con-

strued. to mean the guardian, committee or trustee for the management of the *person and estate* of a person *non compos mentis.* The Act of 1894, Chapter 221, repealed and re-enacted sections 98, 99 and 100 of that Article of the Code of 1888, and they are now sections 116, 117 and 118 in the Code of 1912. In all of them the expression now used is "a guardian, committee or trustee of *the property* of a person *non compos mentis,*" but sec. 103, Art. 16, Code of 1888, provided that "In all cases where a trustee has been appointed by the Court for the management of the person and estate of a person *non compos mentis,* the Court may decree that the property of such *non compos mentis,* or so much thereof as may be necessary, be sold for the support," etc. That is section 121 of the Code of 1912, and the language has not been changed. It is therefore seen that since the Act of 1894, the guardian, committee or trustee of *the property* of a lunatic can apply for the sale for investment, for lease, etc., but the trustee for the management of *the person and estate* of a lunatic is the one to apply for a sale for his support and for the payment of expenses incurred by the trustee. In this case it was alleged in the petition for the writ *de lunatico inquirendo* that "it would be to her interest that some suitable committee be appointed of her person and estate," but the order only appointed the appellees committee of the estate. It is said in *Alexander's Chancery Practice,* 227, that the Chancellor "may intrust the person of the lunatic to one committee and his estate to another. But it is more usual in this State to appoint the same person committee of the person and estate." We do not find anything in the record to sustain the claim that the appellees were appointed committee for the management of the person of the lunatic. It may very well be that a person is willing to be the committee of the estate of one who is *non compos mentis,* but not of the person, and when the petition prays that some suitable committee be appointed of her person and estate, and the decree only appoints a committee of the estate, we can not assume that the Court intended to also appoint them com-

mittee of the person. So, to say the least, it would be a very violent presumption to hold that this sale was made under section 121, which only authorizes a sale when a trustee has been appointed for the management of the person and estate of the lunatic.

But regardless of that, if a sale of the real estate of a lunatic, or some part thereof, is to be made for the support of such lunatic, or for the payment of expenses incurred by the trustee, there should be an application to the Court showing the object and necessity for the sale. The language of section 118 is very broad, "In all applications * * * to sell any of the real, leasehold or personal property * * * the Court shall, before passing an order or decree, have proof taken as in other chancery cases," etc., and while this Court has held, and we still hold, that that is not necessary when the sale is to be made for the purposes mentioned in section 121, such sales are exceptions to the general rule adopted in dealing with a lunatic's property; and if a sale is to be brought within that exception, the Court should be so informed and properly advised by what is called in *Estate of Dorney, Lunatic,*" the presentation of a *prima facie* case," which in that case was a petition verified by affidavit of the committee, the tax bills which were to be paid, and a letter from the collector filed as exhibits. We do not mean to say that exhibits must always be filed with an application for a sale for such purposes, but we are of the opinion that when there is no chancery proceeding there should at least be something of record to show the purpose of the sale—especially in reference to real estate, for although section 118 refers to personal property, as well as real estate, titles to real property should not be left in such uncertainty.

Again, the report of sale states that "your committee believes the same to be for the interest and advantage of the said Monica." That is not such language as would likely have been used if it had been intended to apply the principal to her support, or to the payment of expenses incurred by the committee. It is the kind of expression generally used

in proceedings for the sale of an infant's property for the purpose of reinvestment.

So from whatever standpoint we consider the case, we are unable to reach the conclusion that the sale was made for any of the purposes mentioned in section 121, and the Court had no power to authorize or ratify a sale for investment of the proceeds by reason of an utter failure to comply with the provisions of section 118. It is true that since the Act of 1894 it has not been necessary to issue any process, or have an order of publication, against the lunatic as it was when the proceedings were taken in *Willis* v. *Hodson,* 79 Md. 327; but the provisions of section 118 must be substantially complied with before the Court is authorized to pass an order or decree for sale or lease under sections 116 or 117. In this case there was not even an order or decree passed, as the mere leave to file the report of sale can not be so regarded. It follows from what we have said that in our judgment there was no valid sale of this property, and, of course, there was no conversion of the real estate into personalty.

The only remaining question we need to consider is, what disposition shall be made of the $1,200.00 received by the committee. The appellant did not object to the sale, but asked in her petition that the money be turned over to her. As she seeks the relief of a Court of Equity, she must do equity. Indeed, if this money is paid over to her and she accepts it, she would be estopped from making any claim for the property intended to be sold, but if she is to get the benefit of the fund she should give the purchaser a deed, so it can have such title as it supposed it was getting by the sale which was ratified by the Court. The Susquehanna Pole Line Co. is not a party to this proceeding, but if it still holds the property attempted to be sold to it, and desires to have its title perfected, it should be permitted to come into Court and state its willingness to have the sale thus perfected. If it has disposed of such interest as it acquired, or was supposed to have acquired under the sale, then the present owner

of that interest should be permitted to stand in the place of that company. Upon said company or its assigns thus coming into Court and stating its or their willingness to have the sale perfected, an order should be passed directing the said sum of $1,200.00, less the costs and expenses connected with the attempted sale and costs of this case, to be paid over to the appellant upon her executing and delivering to The Susquehanna Pole Line Co., or its assigns, a good and sufficient deed for the property described in the report of sale. If that company or its assigns does not within such reasonable time after notice to it or them as the lower Court may fix thus come into Court, then the said sum of $1,200.00, less such amount as the lower Court may determine to be a reasonable compensation for the use of the land and any injury done to it by that company, or its assigns, and the costs of this case, should be returned to the company or its assigns, upon it or their surrendering the property to the appellant.

We deem it just that the costs be paid out of the $1,200.00, as it will not be right under the circumstances to require the committee to pay them individually or make the estate liable for them. It follows that the decree of the lower Court must be reversed, and the case remanded for further proceedings in accordance with this opinion.

> *Decree reversed and cause remanded for further proceedings, the costs, above and below, to be paid out of the $1,200.00 in the hands of the committee.*