WALLACE M. WALKER, et al. *v.* WICKLIFFE B. WYSE, et al.

[No. 129, October Term, 1946.]

*Decided May 15, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Walter C. Mylander*, with whom were *Walter C. Mylander, Jr.*, and *Joseph S. Knapp, Jr.*, on the brief, for the appellant, Wallace W. Walker.

*Hall Hammond* for the appellant; *Albert Stroebel, Daniel B. Leonard*, with whom were *Cornelius Maloney* and *James C. L. Anderson* on the brief, for the appellee, Wycliffe B. Wyse.

*Bowie, Burke & Leonard*, with whom were *Jenifer & Jenifer* on the brief, for the other appellees.

MARKELL, J., delivered the opinion of the Court.

Francis O. Wyse, who died in 1893, by will left "the farm known as Deer Park, now in my possession, being a part of the undivided Estate of the late William Wyse," to his wife for life and after her death to his five children, in equal interests, expressing an "earnest wish that this property shall be kept in the family forever, if possible." It had been in the family for generations. It continued in the possession of his widow until her death in 1925, and thereafter of his son Dr. William P. E. Wyse, and his wife, until the death of Dr. and Mrs. Wyse by an automobile accident on March 12,

1945. At the time of Dr. Wyse's death he owned a three-tenths interest, he and his brother John having acquired by deed in 1902 the interest of a sister; Mrs. Rachel Thayer Wyse, John's widow, owned three-tenths; James D. Murray, trustee under the will of another sister, two-tenths; and Mrs. Mary Augusta Wyse Benson, another sister, the remaining two-tenths. Mr. Murray and Mrs. Rachel Thayer Wyse are not residents of Maryland. On April 20, 1944, in a proceeding under Art. 16, sec. 125 in Anne Arundel County, Mrs. Benson had been adjudged incompetent and her daughter, Mrs. Mary Benson Kraft, appointed committee of her person and estate.

Dr. Wyse by will left his estate to his two sons, Wickliffe B. Wyse (plaintiff, appellee) and Coleman B. Wyse. Coleman died intestate on July 4, 1945, leaving his widow and Wickliffe his only heirs. In 1944 Coleman and his wife had executed an agreement releasing all rights in each other's estates; after his death she claimed that the agreement was void as against her and she was entitled to her share in his estate.

"Deer Park" is in Baltimore County, on both sides of Smith Avenue, about 52 acres, unimproved, on the south side and 112 acres, with improvements, on the north side. On April 6, 1941 Dr. Wyse had "listed" for sale with Albert P. Strobel, Jr., (defendant, appellant), a real estate broker, the property on the south side at $800 per acre. It was not sold, and later was withdrawn from the market. On February 13, 1945 Dr. Wyse again listed this property with Mr. Strobel at $600 per acre; he signed the "listing contract" "Part Owner, W. P. E. Wyse, Agent." On March 5, 1945 Dr. Wyse for $250 gave Harry D. Myerberg an option for 60 days to purchase the property at $500 per acre, Strobel to get a five per cent. commission, it being agreed that "as there are a number of interests in this estate, * * * if all interests do not accept these terms * * *, the deal will then be null and void with no liability on either party and the option money of $250

shall be returned." None of the other interests did accept the terms of the option. In May, 1946 another broker, J. Kearsley Kearney, sold the property for $40,000, subject to the approval of the court. The decree in the instant case declared the Myerberg option "null and void," and Myerberg has not appealed.

On March 15, 1945 Mr. Strobel wrote Wickliffe that Myerberg was "ready to go through with the deal" for the south side property and had said he would probably be interested in the north side property, and that Strobel thought Myerberg would pay the same price for the north side property, *viz.*, $500 an acre. In this letter he said, "Your father explained to me that there will be certain complications as I believe there were ten heirs to this property and that some of them may be in the armed forces. What I will need at once will be the information as to who will control your family affairs; whether the various members of the family are ready to go through with this deal; if so, I will need a title reference and all information that you can give me as to who the heirs are and what interest each would have."

On April 19, 1945 Wickliffe listed with Mr. Strobel the north side property at $55,000. Before this formal "listing" Strobel had already been working on the sale of the property. On April 25, 1945 a contract was executed by which "Wickliffe B. Wyse Agent Vendor" sold the property to Dr. Wallace W. Walker (defendant, appellant), vendee, for $42,500, of which $2,000 had been paid (to Strobel) at the signing of the contract and the balance was to be paid "in cash on date of settlement which shall be within ninety days from the signing hereof. It may be necessary to extend settlement date pending settlement of estate and title search. * * * Title to be good and merchantable, otherwise sale shall be void and the payment made at the signing hereof returned to the Vendee." Upon execution and delivery of the contract there was to be due by the vendor to Strobel "the regular brokerage commission." The contract

was signed at Strobel's office, first by Wickliffe, later by Dr. Walker. As Wickliffe and Mrs. Kraft left the office, Dr. Walker came in.

Mr. Strobel says Wickliffe had explained to him that there were four or five owners, all of whom had to be satisfied, and he had told Wickliffe that before Wickliffe could sign they must get the consent of all of those members of the family. Wickliffe and Mrs. Kraft went to Strobel's office and Wickliffe there telephoned Mr. Murray and Mrs. Rachel Thayer Wyse. On the evening of April 24th Mrs. Wyse telegraphed Strobel, in response to a telegram from him, giving authority to sell "for $42,500 cash, $2,000 deposit, settlement ninety days." The next afternoon Mr. Murray telegraphed Strobel "Acceptance offer $42,500 cash" for the property. "Satisfactory." The same day Mrs. Wyse wrote confirming her telegram. On April 26th Mrs. Kraft, "Committee for Estate of Mary A. Benson," wrote Strobel, "confirming what I told you yesterday," agreeing to the sale for $42,500, "$2,000 to be paid now and the balance in ninety days." On July 23, 1945 Mr. Murray, and on July 24th Mrs. Wyse, wrote Mr. Strobel, refusing to "ratify" the contract of sale.

Dr. Walker employed the Maryland Title Guarantee Company to examine the title. Mr. Knapp, of the title company, is counsel for Dr. Walker. On July 6, 1945 counsel for Mrs. Kraft, committee, wrote to the title company, "Attention—Mr. Knapp," to be advised "as to what you require from Mrs. Kraft incident to the transfer." The title company's report on the title, dated October 30, 1945, addressed to Mr. Knapp, found the title vested in Mrs. Benson and others, but did not mention the adjudication of her incompetency or the appointment of her committee.

Mr. Strobel cannot say that he did or did not explain to Dr. Walker who the several owners of the property were. "It is usual and customary for me to explain everything. * * * I might * * * have shown him the letters and the telegrams which I had received from the

various parties in interest." Dr. Walker left that to Strobel. Dr. Walker says he did not ask Strobel who the other interested parties were. "I thought that was his business. He was selling the property."

On January 8, 1946 the bill of complaint in the instant case was filed by Wickliffe, individually and as administrator *c. t. a.* of Dr. Wyse and administrator of Coleman, against Mrs. Benson, Mr. Murray, trustee, Mrs. Rachel Thayer Wyse, Coleman's widow, Dr. Walker, Mr. Strobel and others, alleging that "Deer Park" is not susceptible to partition without material loss and injury and it is to the benefit and advantage of all persons interested in the property that it be sold and the proceeds brought into court to be divided among those entitled thereto. This particular allegation is admitted in Dr. Walker's answer, filed February 14, 1946, and the other answers. The bill does not mention the fact or the adjudication of Mrs. Benson's incompetency or the appointment of her committee. Mrs. Benson was not summoned. Mrs. Kraft, as committee, obtained in Anne Arundel County an order purporting to authorize her to file an answer as committee, which she did.

The bill also alleged that: On April 25, 1945 plaintiff, "as Agent and as Co-tenant with others interested therein and on his own and their behalf, "executed the contract of sale with Dr. Walker, which was filed as an exhibit; "said sale was made upon the express understanding that it was subject to the approval of this Court"; the title search was not completed until October 30, 1945; at the time of entering into the contract, plaintiff believed that the sale was "to the best interest and advantage of all parties interested" in the property, but "due to the delays which have been occasioned in part by" Coleman's death and "the time consumed in searching the title to the property" and "the time which will necessarily elapse before title can be conveyed," plaintiff "is not certain whether or not it is now, or will be at the time of the consummation of said sale, to the advantage of all persons interested in

said Estate that said sale be made at said price of $42,500"; at the time plaintiff entered into the contract "he was of the opinion that said sale was advantageous to all parties interested and he accordingly submits said sale for the consideration" of the court. The bill prays that "Deer Park" (both north and south of Smith Avenue) be sold and also that the contract of April 25, 1945 "be ratified and confirmed if the same be found advantageous to all parties in interest."

Dr. Walker in his answer alleges that: "He has been ready, willing and able to consummate the purchase of the property since the signing of the Contract"; the delays are in no way due to any fault on his part but "are caused solely by the complicated status of the title"; the price "is a fair price and was the highest price obtainable"; at the time of signing the contract "it was not known to him that a proceedings [sic] would be necessary to consummate the sale, nor was any such information disclosed to him by the Contract of Sale, or otherwise, but * * * he believes that said sale was and is to the best interest and advantage of all parties interested in the property," and should therefore be approved by the court. Mr. Murray, trustee, and Mrs. Rachel Thayer Wyse in their answers allege that the contract "has no binding effect and is now void" so far as they are concerned. Mrs. Kraft, committee, in her answer alleges that she "had no authority to delegate anyone to contract for the incompetent," Mrs. Benson.

On September 9, 1946, at the beginning of the hearing, Dr. Walker amended his answer so as to allege that "the party owners, having obligated themselves by the absolute terms of a fair and reasonable contract, are precluded in these proceedings from asking for any sale otherwise than in consummation of the contract made with" him "by the duly authorized agent of all of them." On the same day he petitioned the court, under Art. 16, sec. 226, to determine "in advance of the trial of the whole case" two "questions of law," (a)

whether plaintiff, "at least to the extent of 'his owner-
ship" in the property, is not bound by the contract if
the court finds that the contract "was never revealed"
to Dr. Walker as being subject to the approval of the
court, and (b) whether, in such event, plaintiff, in his
own right or in either of his representative capacities,
has such an interest in the property as entitles him to
file a bill for sale for partition under Art. 16, sec. 159.
On account of the lateness of this application the court
deferred determination of these questions until the deci-
sion of the whole case.

Soon after the contract of April 25, 1945 was exe-
cuted, Dr. Walker employed Mr. Strobel to effect
"resales" of parts of the property contracted for.
Through Strobel's negotiations Dr. Walker on May 28,
1945 made a contract of sale to Albert Meid, Jr., of
the residence and 4¾ acres for $13,500, about the
same time sold a tenant house and three or four acres
to one Shaneybrook for $6,500, and in July arranged,
without a formal contract, to sell to Arundel Corpora-
tion 27 acres for $6,750, i.e., $250 an acre. There is
testimony that Meid spent about $2,800 on the house
on the strength of oral permission from Wickliffe
through Strobel. There is conflicting testimony as to
the scope of Wickliffe's permission and whether these
expenditures were made for "improvement," "mutila-
tion" or "demolition" of the property. On June 23,
1945 Wickliffe, after finding himself locked out of the
house, wrote Meid notifying him "to cease all demo-
lition, all activity and trespass on this property." Meid
is not a party to this case. Our disposition of the instant
appeals will be without prejudice to any claims against
the property or against any of the owners or Dr.
Walker or Meid for benefits or damages respectively.

At the hearing four real estate experts testified as
to the value of the property. Mr. Strobel testified that
he considered $42,500 a fair price at the time the con-
tract was entered into, but the property "is worth more
money today." "I thought that it was worth more even

at that time but I could not get it." Mr. Ferguson testified that then and now it was worth $42,500; Colonel Harvey, $55,000; and Mr. Kearney, $65,000. The lower court was "not convinced that it is for the interest and advantage of the incompetent that the contract of sale be confirmed"; it held that it had jurisdiction under Art. 16, sec. 159, to decree a sale for partition. By its decree, dated October 29, 1946, the court "disaffirmed" the contract of April 25, 1945 and ordered Mr. Strobel to return to Dr. Walker the $2,000 paid, without prejudice to any rights of Walker or Strobel against the owners of the property, except the incompetent; the court also decreed that the property be sold and appointed trustees to sell.

From this decree Dr. Walker and Mr. Strobel have appealed. They raise the same questions raised in Dr. Walker's petition of September 9, 1946, and also contend (presumably in the alternative), (1) that the evidence warranted confirmation of the contract and (2) that the court had no jurisdiction to decree a sale, because the incompetent was never summoned.

We think the last contention is sound. Art. 16, sec. 159 is applicable "to cases where some or all of the parties are *non compos mentis*" or are infants. "Upon return of process as served, * * * the court shall * * * by order, either require the legal guardian or committee of the infant, or non-sane defendant * * * to appear, answer and defend for such party, or appoint a guardian *ad litem* to answer and defend the suit for such party." Art. 16, sec. 168; Rule 14. Without service of process the court acquired no jurisdiction over the incompetent defendant. In *Roche v. Waters*, 72 Md. 264, 269-272, 19 A. 535, 7 L. R. A. 533, it was so held, with respect to infants, under the Act of 1816, ch. 154; Art. 16, sec. 64, and a retroactive curative statute was held unconstitutional. The committee had no power to contract for the incompetent and neither the incompetent, the committee, the lower court nor the court in Anne Arundel County had power to waive or dispense with

service of process. Nor has this court. In the instant case this result may seem an unfortunate "technicality," but notice is a fundamental of jurisdiction.

In view of the full hearing on the question of value, we may say, without laboring the question, that (if the incompetent were properly before the court) we should affirm the conclusion that it was not shown to be for the interest and advantage of the incompetent that the contract of April 25, 1945 be confirmed. Not the number of experts, but the nature of Mr. Strobel's testimony, the sales subsequent to April 25, 1945, and the self-interest of all parties in respectively advocating or opposing confirmation, lead to the same conclusion.

Appellants contend that the contract of April 25, 1945 was a judicial sale and, if it was fairly made and was then for the interest and advantage of the incompetent, should now be confirmed, though not now for her interest and advantage, citing *Cook v. Safe Deposit & Trust Co.*, 172 Md. 398, 191 A. 713; *Blank v. Frey*, 165 Md. 647, 170 A. 156; and *Leary's Case*, 50 N. J. Eq. 383, 25 A. 197. The first case cited was a sale made under a testamentary power; by statute only, judicial confirmation, not authorization, was required. The other two cases were sales made under *previous* judicial decrees and subsequently confirmed. A "contract" made "for or on behalf of any infant * * * or person *non compos mentis*," within the meaning of Art. 16, sec. 159, is only a proposal, not a judicial sale, until it is found to be "for the interest and advantages, both of such infant * * * or person *non compos mentis*, and of the other person or persons interested therein," and is confirmed by the court. The provisions as to such a "contract" in section 159 originated in the Act of 1785, ch. 72, sec. 12, were omitted in the Code of 1860 and were reenacted by the Act of 1886, ch. 232. *Miller, Equity Procedure*, sec. 397. In the Act of 1785 the required findings as to "interest and advantage" were the same with respect to such a "contract" as with respect to sale for partition. They relate to the pres-

ent. A "contract" is not for the interest and advantage of the parties, if it is now against their interest but might have been for their interest eighteen months *ago* —eight months before the bill was filed and the "contract" submitted.

If the contract of April 25, 1945 is binding upon the plaintiff, Wickliffe, to the extent of his interest in the property, the court is not for that reason without jurisdiction. Under section 159 confirmation of a contract is (and in 1785 was) an alternative for (or a method of) sale for partition. Any "tenant in common" may file a bill for partition, sale for partition, or confirmation of a "contract"; one bound by such a "contract" is not excepted. Indeed, it seems natural that the bill for confirmation of the "contract" be filed by a party to the "contract." The instant bill of complaint states a case for sale for partition, but fails to allege, or ask confirmation of, a contract made "for or on behalf of any person *non compos mentis.*" To give jurisdiction it is sufficient that the bill would be good on demurrer, even if plaintiff's right were denied in the answer. *Barron v. Zimmerman,* 117 Md. 296, 305, 83 A. 258, Ann. Cas. 1914D, 574.

No question as to specific performance is presented on the record, though questions as to partial specific performance have been argued orally and in the briefs. Dr. Walker has filed no bill or cross-bill for specific performance (*Rickard v. Neff,* 130 Md. 89, 99 A. 940), complete or partial. He has not even formally expressed willingness to buy separately Wickliffe's undivided interest. Specific performance is not a spontaneous remedy, obtained without asking.

We do not regard *Morris v. Wilson,* 187 Md. 217, 49 A. 2d 458, as narrowing the proper scope of partial specific performance, but as illustrating some of the limitations of the far from rigid principles of specific performance. Assuming, without deciding or suggesting, that consistently with due diligence Dr. Walker might now ask partial specific performance, it is clear

that he would not be entitled to this remedy against Mr. Murray, trustee, or Mrs. Rachel Thayer Wyse, and it is not clear that he would be entitled to it even against Wickliffe. The contract of April 25, 1945 was an entire contract for the sale of the property, not of undivided interests in it. Mr. Murray and Mrs. Wyse agreed to unite in such a sale, not to sell their interests separately. They neither warranted nor represented that Wickliffe had authority to bind Mrs. Benson or any one except themselves respectively. If an agent contracts to sell property of A and B, and B is an infant, the purchaser cannot specifically enforce sale of A's half interest. *Lumley v. Ravenscroft,* [1895] 1 Q. B. 683.

Dr. Walker argues, from a note in 154 A. L. R. 767, that, in order to be entitled to partial specific performance, a purchaser need not be "unaware" of his vendor's lack of title, if he is "unaware" of lack of means of furnishing the title contracted for. Assuming, without deciding, that some such contention might be sound, it would not necessarily follow that Dr. Walker would be entitled to partial specific performance against Wickliffe merely because he failed to ask Strobel who the owners were and to ascertain that one was an incompetent. The provisions of the contract, *e.g.,* for extension beyond ninety days "pending settlement of estate and title search," and for failure to furnish a merchantable title would not suggest to Dr. Walker that Wickliffe had power to bind all interests.

If the court had acquired jurisdiction over Mrs. Benson, it would properly have refused to "confirm" the contract. We think, that on the issues presented, it should not have "disaffirmed" the contract and ordered Mr. Strobel to return to Dr. Walker the $2,000 paid, even with express reservation of any rights of Walker or Strobel against any of the owners other than Mrs. Benson.

Mr. Strobel on his appeal asks allowance of commissions against all or any of the owners. His rights,

if any, to commissions were not properly an issue in this case.

> *Decree reversed and cause remanded for further proceedings not inconsistent with this opinion, costs above and below to be paid by the owners other than Mrs. Benson.*