# SCHNEIDER *v.* DAVIS

[No. 62, October Term, 1949.]

318

*Decided January 13, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Marvin I. Anderson* and *K. Thomas Everngam* for the appellant.

*Wesley E. Thawley* and *W. Brewster Deen* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Josef Schneider filed a bill of complaint in the Circuit Court for Caroline County against John O. Davis for specific performance of a contract to sell for $5,000 a farm in Caroline County, containing about 135 acres in all, of which some 80 acres were tillable. The contract was dated May 21, 1946, and signed by both parties, but not by Jennie Davis the wife of John O. Davis, who since 1930 has been hopelessly insane, although never

adjudicated, and confined in the Springfield State Hospital (subsequently transferred to the Eastern Shore State Hospital.) Before the contract was signed Schneider gave Davis two checks, totalling $500, which Davis accepted but never cashed or deposited for collection. Under the terms of the contract, Davis was to deliver possession on December 31, 1946, at which time the balance of the purchase price ($4,500) was to be paid and a good, merchantable title in fee simple to be conveyed. Schneider had a new roof put upon the dwelling house in the late summer of 1946, with Davis' consent. On December 27, 1946, Davis moved out and Schneider moved in. He was still in possession when the bill was filed on September 2, 1948, although Davis gave him notice to quit in December 1947, and offered to return the checks. In July 1947, Davis filed an ejectment suit that is still pending.

Schneider knew that Davis had an insane wife at the time the contract was signed in 1946. He contends that Davis told him he intended to get a divorce and that this would clear the title. Davis testified that he told Schneider that if he couldn't give title in his own name the deal was to be off. Davis filed a suit for divorce in July 1946, but did not press it when he was advised that the court would require him to file a bond for his wife's support, or impound a part of the proceeds for her benefit. It appears that Davis purchased the farm in question with his own funds in 1941.

The bill of complaint prayed that Davis be required to convey the farm in accordance with the contract, that the suit in ejectment be enjoined, and for other and further relief. The answer alleged that Davis was unable to obtain his wife's joinder in the deed so as to bar her inchoate right of dower, that he is now unwilling to apply for a divorce, and that he has repeatedly offered to give a deed signed by himself alone, but the complainant has refused to accept it. After an extended hearing, the chancellor held that specific performance could not be decreed "by reason of the insanity of the wife", but passed a decree requiring Schneider to surrender pos-

session on or before March 1, 1949, to pay a balance of $233, representing the difference between expenditures of $1017 allowed to Schneider, and an allowance to Davis of $1250 for use and occupation from December 27, 1947 to March 1, 1949. The decree also allowed Schneider to harvest growing crops of wheat and barley in 1949, and to remove certain spruce trees and seedings prior to December 31, 1949. The costs were divided. The appeal is from that decree.

The appellant does not suggest that Davis could be required to proceed with his divorce action, but contends that, having assumed jurisdiction, the court should have appointed a trustee or guardian to release the wife's inchoate right of dower or to evaluate and preserve it in the proceeds. It is well settled that equity has no inherent power to deal with insane persons or their property. *Hamilton v. Traber*, 78 Md. 26, 30, 27 A. 229, 44 Am. St. Rep. 258; *Rutledge v. Rutledge*, 118 Md. 552, 559, 85 A. 661; *Bliss v. Bliss*, 133 Md. 61, 70, 104 A. 467; Pomeroy, Equity Jurisprudence (5th ed.) § 1311 *et. seq.* It has been expressly held that, in the absence of statute, equity cannot dispose of the dower rights of an insane wife through the appointment of a committee or guardian. *Petition of Cody*, 1928, 243 Mich. 553, 220 N. W. 788; 2 Scribner on Dower (2nd ed.) p. 303. The appellant relies upon section 125; Article 16 of the Code (1947 Suppl.) which empowers the equity courts to appoint a committee or trustee to take charge of and manage the property of any person incompetent by reason of a mental disability and, upon application by the trustee, to decree the sale and reinvestment of any real property or any interest therein to which the incompetent may be entitled. It may be doubted whether an inchoate right of dower is an interest in property within the meaning of this section. It was held in *Roth v. Roth*, 144 Md. 553, 554, 125 A. 400, that the inchoate right of dower of a sane wife could not be sold under the somewhat analogous provisions of Section 228 (now 252) of Article 16 of the Code. The court said that such an interest "may be ex-

tinguished by release, but is not susceptible of being sold or transferred. * * * The marital interest which is sought to be made the subject of a judicial sale in this case is one of which the wife cannot be divested without her consent." In the instant case there is no showing of necessity or that such a disposition would be to her interest. The duty of support rests upon the husband during their joint lives, and presumably he is prepared to meet that obligation. It is difficult to see how it could be to her interest to release at this time a potential right to an award of dower, in the event she survives her husband. Such a right is not one that requires to be "taken care of or managed". But the short answer to the contention is that the wife is not a party and is unrepresented. The prerequisites of Section 125 have not been met, and we think the chancellor acted well within the limits of his discretion in declining *sua sponte* and at the instance of the vendee, to take action under that section. *Cf. Tucker v. Hudson,* 158 Md. 13, 22, 23, 148 A. 116.

The appellant also invokes section 13, Article 45 of the Code (1947 Suppl.) which provides:

"Where any married man or married woman is a lunatic or insane, and has been so found upon inquisition and the said finding remains in force, the husband or wife of such lunatic or insane person may grant and convey by his or her separate deed, whether the same be absolute or by way or release or mortgage, as fully as if he or she were unmarried, any real estate which he or she may have acquired since the finding of such inquisition."

It is nowhere shown in the record in this case that there has even been a judicial finding of incompetency, in any form. The appellant states in his brief that after the hearing and passage of the decree appealed from, he discovered that a proceeding was instituted in 1931 under the Uniform Veterans' Guardianship Act, Sections 56A to 56U, Article 65 of the Code (now Sections 19-41, Article 96½ of the 1947 Suppl.) and that the Circuit Court for Caroline County passed an order, upon

a certificate filed by the Veterans' Bureau (without any independent finding of insanity) appointing a guardian of Jennie Davis to receive and disburse the proceeds of a War Risk Insurance policy upon the life of David Watterson, a relative killed in World War I, of which Jennie Davis was the beneficiary. The appellant has printed a copy of these proceedings in his appendix. He contends that this order is, in legal effect, a finding that Jennie Davis was a lunatic or insane "upon inquisition".

We have sustained the constitutionality of the Veterans' Act, In re *Rickell's Estate*, 158 Md. 654, 149 A. 446, 150 A. 25, although by a closely divided court. It is generally held that the appointment of a guardian under the Uniform Act does not amount to an adjudication of incompetency. See note 173 A. L. R. 1077. However, we cannot pass upon this contention for the reason that it is not properly before us. Rule 9 of our Rules Relating to Appeals states that "In no case shall the Court of Appeals decide any point or question which does not plainly appear by the record to have been tried and decided by the Court below".

The appellant contends, however, that if we cannot decide this point we should remand without reversing or affirming, under Section 42, Article 5 of the Code, to permit a further hearing. That section has been liberally construed. *Takacs v. Doerfler*, 187 Md. 62, 48 A. 2d 328; *Krauss v. Litman*, 189 Md. 394, 56 A. 2d 37, 40. But it can hardly be invoked to permit the setting up of a new and different case upon an inconsistent theory. *Cf. Clarke v. Brunk*, 189 Md. 353, 55 A. 2d 919, 923. Here the appellant knew that the wife was insane before the contract was signed in May 1946. Yet the proceeding now relied upon was not discovered until 1949. In the meantime, the appellant has repeatedly refused a tender of a deed from the appellee alone, without abatement of the purchase price. *Cf. Trotter v. Lewis*, 185 Md. 528, 537, 45 A. 2d 329. Even assuming, without deciding, that there is merit in the contention

now advanced, we are not disposed to remand the case in view of the lack of diligence and the election to refuse the appellee's tender. *Cf. Morris v. Wilson,* 187 Md. 217, 227, 49 A. 2d 458.

The appellant contends that if he is not entitled to relief on any of the grounds discussed, he should be entitled to partial performance with an abatement of the purchase price or indemnity to protect the inchoate right of dower of the wife. We may assume, without deciding, as we did in *Morris v. Wilson, supra,* 187 Md. 217, page 227, 49 A. 2d 458, that partial specific performance may be granted under the prayer for general relief. We said in that case however, 187 Md. at page 225, 49 A. 2d at page 462: " 'But to be entitled to specific performance with compensation, the buyer must, generally, have been unaware of the deficiency at the time of the bargain.' Pomeroy, Equity Jurisprudence, (4th Ed.), Equitable Remedies (2nd Ed.), § 2256, p. 5041." *Cf. Walker v. Wyse,* 188 Md. 461, 473, 52 A. 2d 918.

The appellant cites Restatement, Contracts § 365, illustration 4, for the proposition that where the wife of a vendor refuses to join in the deed, the purchaser may properly be given a decree that the vendor transfer all his interest in the land with either an abatement in price measured by the difference in value caused by the non-conveyance of the dower interest, or with sufficient indemnity against future injury to the vendee, in case the vendor's wife survives him and enforces her rights. This statement, however, is qualified by § 365 (b) : "* * * The plaintiff may have had knowledge that full performance was impossible, and the defendant may not have had such knowledge. Facts such as these must be considered in determining whether specific performance of part of a contract, with compensation or an abatement in price, will be decreed under the rule stated in this section." § 365 (e) provides: "If for any reason it is impracticable for the court to determine a fair abatement in price or reasonable compensation for the partial non-performance, it is within the court's discretion to

refuse a decree for specific performance except upon payment of the full agreed price by the plaintiff". *Cf. Trotter v. Lewis, supra.*

Williston, Contracts (Rev. ed) § 1436, states: "A purchaser * * * can require defective specific performance with abatement of the price or with compensation * * * unless when he entered into the contract he was aware that the vendor was unable to fulfill the contract. In that case compensation will not be given."

The authorities are by no means in accord as to whether, under any circumstances, partial specific performance, with abatement or compensation, may be decreed. See notes 46 A. L. R. 748; 148 A. L. R. 292; *Tebeau v. Ridge,* 261 Mo. 547, 170 S. W. 871, L. R. A. 1915C, 367. Some courts stress the difficulty of ascertaining the present value of a potential interest. *Long v. Chandler,* 1914, 10 Del. Ch. 339, 92 A. 256, 261; *Pearson v. Adams,* 394 Ill. 391, 68 N. E. 2d 777; *Mooers v. Wilson,* 183 Va. 910, 33 S. E. 2d 791. This consideration may be important in Maryland, because of the statement in *Reiff v. Horst,* 55 Md. 42, 49, that "we have no scale or standard for ascertaining its present worth". *Cf. U. S. v. Certain Parcels of Land, D. C., Md.,* 46 F. Supp. 441, criticised in note 7, Md. L. R. 263. But see Rule 603, Rules of the Supreme Bench of Baltimore City. On the other hand, it has been pointed out that since the vendee is ordinarily relegated to an action for damages, the same problem of valuation must be met in the other forum. *Najarian v. Boyajian,* 48 R. I. 213, 136 A. 767. Williston comments (§ 1436): "* * * the purchaser is entitled, on paying the contract price for entire performance, to receive such partial performance as the vendor can give, and the purchaser after thus carrying out the bargain would also have a right of action against the vendor for the latter's failure to perform in full. A court of equity in giving relief with compensation is merely disposing in one suit of the two rights of the purchaser." But he also says: "* * * the only proper ground for refusing a decree with compensation is that no exact equivalent

in compensation is possible, and it may be urged with some force that this is true where the defect in question is an inchoate right of dower." See also Pomeroy, Specific Performance (3rd ed.) § 460.

We find it unnecessary to pass on the questions of compensation or valuation in this case. It is clear that the purchaser knew that the vendor was married when the contract was signed. Pomeroy, Specific Performance (3rd ed.) § 461, states flatly: "The true principle is that laid down in the English cases heretofore quoted. If the vendee knows that the vendor is a married man, he knows that his wife is entitled to dower, and that she cannot be compelled to release her dower right, and entering into the contract with such knowledge, he is not entitled, within the doctrine as well established, to ask anything more than the husband himself can give." This view finds support in many cases. *Rundel v. Gordon,* 92 Fla. 1110, 111 So. 386; *Foxworth v. Maddox,* 103 Fla. 32, 137 So. 161; *Fortune v. Watkins,* 94 N. C. 304; *People's Sav. Bank Co. v. Parisette,* 68 Ohio St. 450, 67 N. E. 896, 96 Am. St. Rep. 672; *Kuratli v. Jackson,* 60 Or. 203, 118 P. 192, 1013, 38 L. R. A., N. S., 1195, Ann. Cas. 1914A, 203; *Contra, Brookings v. Cooper,* 256 Mass. 121, 152 N. E. 243, 46 A. L. R. 745. See also *Elwood v. Smith,* 95 N. J. Eq. 195, 122 A. 889; Bondarchuk v. Barber, 135 N. J. Eq. 334, 38 A. 2d 872; *Najarian v. Boyajian, supra; Long v. Chandler, supra.* In the latter case the court thought that knowledge of the marital status would not be controlling, if the husband represented that the wife would join. In the instant case the purchaser knew when the contract was signed that the wife was insane and could not join. Under the circumstances we hold that partial specific performance could not be decreed, except upon payment of the full purchase price.

This brings us to the final contention in the case, that the chancellor erred in allowing the vendor for the use and occupation of the farm. Under the terms of the contract the purchaser was entitled to possession of the farm from December 31, 1946, and was the equitable

owner thereof, (*Caltrider v. Caples*, 160 Md. 392, 396, 153 A. 445, 87 A. L. R. 1500), subject only to the wife's inchoate right of dower, which could not become a present interest until the husband's death. The husband bound himself to procure full title which he did not have at the time of the contract. As between the parties the purchaser was entitled to the rents and profits, and he should not be charged with the rental value. We think the vendor should have been allowed only interest upon the unpaid purchase money, "So, as an adjunct of specific performance, the purchaser is ordinarily allowed the rents and profits of the land or its rental value, and the vendor interest on the purchase money during the period between the day fixed by the contract and the day when conveyance is made." 5 Williston, Contracts (Rev. ed.) §1430. See also *Sladkin v. Greene*, 359 Pa. 528, 59 A. 2d 105; *Old Time Petroleum Co. v. Turcol*, 18 Del. Ch. 121, 156 A. 501, 507. In these cases specific performance was decreed, but we think the analogy is clear. The decree must be modified in this respect, and also to permit further time for the removal of crops or trees, as to the status of which we are not informed. In all other respects the decree of the chancellor will be affirmed.

*Decree affirmed in part, reversed in part and case remanded, the costs to be divided between the parties.*